THE CHICAGO TITLE AND TRUST COMPANY, Exr.

*v.*

THE CITY OF CHICAGO.

*Opinion filed April 20, 1904.*

DAMAGES—*damages for wrongful issue of an injunction must not be remote or speculative.* Damages recoverable for the wrongful suing out of an injunction must be such as naturally and approximately result therefrom, and remote or speculative damages cannot be taken into consideration.

*Chicago Title and Trust Co.* v. *Chicago,* 110 Ill. App. 395, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

EDWARD ROBY, and ARTHUR HUMPHREY, for appellant.

GRANVILLE W. BROWNING, (EDGAR B. TOLMAN, Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Blocks 5 to 16 of Pine Grove subdivision, in Cook county, extend from Evanston avenue to Lake Michigan. Blocks 6, 7 and 12 are so laid out that each is bounded on the east by a line marked on the plat of the subdivision, and between this east line and the shore of Lake Michigan is a strip of land 2172 feet long north and south by about 160 feet wide east and west. Since 1871 one Parker R. Mason had been in possession and claimed to own the land in front of block 7, extending from the east lot line to the lake shore, together with considerable other land to the north and south of it, being in all about 1858 feet long. The lake washed sand and gravel upon this strip from time to time, which had a merchantable value and which Mason was in the habit of removing and selling. When holes were dug in the sand for the pur-

pose of removing it, the wind and water, in the course of time, would re-fill them, and if the sand was not removed immediately as it washed upon the shore, it was carried away and buried in the lake. On September 25, 1884, the town of Lake View filed its bill of complaint in the superior court of Cook county against Mason and other defendants, asking for an injunction restraining them from digging, carrying and carting away, or selling, any of this sand or gravel, or from entering on the strip of ground for the purpose of dredging out or hauling away sand from the bottom of Lake Michigan. A temporary injunction was granted and served upon the defendants, and it continued in full force and effect until July 13, 1885, when it was dissolved. On August 15, following, Mason filed his suggestion of damages, asking, first, a solicitor's fee for procuring the dissolution of the temporary injunction; second, $10,000 damage for the value of sand and gravel which he was enjoined from removing during the continuance of the injunction; and third, $1000 damage to his lawn, lying west of the strip in controversy, by reason of the sand blowing and drifting thereon. On August 6, 1887, the town of Lake View became a part of the city of Chicago, and the city was substituted as complainant. Before the final hearing on the suggestion of damages Mason died, and the Chicago Title and Trust Company, his executor, was substituted as defendant. The original case was heard in July, 1892, and a decree was entered sustaining the bill and restoring and making perpetual the preliminary injunction as issued September 25, 1884, and as dissolved July 13, 1885. That decree was reversed by this court, (163 Ill. 351,) and upon a rehearing a decree was rendered confirming the title to the strip in Mason. On July 5, 1902, upon a hearing on the suggestion of damages, a decree was entered for $500 solicitor's fee and $500 damage for the value of sand and gravel which Mason had been prevented from removing during the pendency of the injunction, and the

third suggestion of damages, *i. e.*, injury to the lawn, was rejected altogether. An appeal was prayed to the Appellate Court by the claimant, where the decree was affirmed, and a further appeal has been taken to this court.

No complaint is made as to the $500 solicitor's fee allowed by the decree of the superior court. In the Appellate Court the city assigned a cross-error upon the allowance of the second $500 upon the ground that there was no warrant for the same either in the law or the evidence, but in this court that assignment of error has been withdrawn, and appellee simply insists that the order of the Appellate Court should be affirmed. Appellant, however, very earnestly insists that said $500 is inadequate, and that the evidence shows that a very much larger amount of damages was sustained on that item; also, that the third suggestion of damage should have been allowed,—and these two last questions are alone presented for our decision.

The evidence as to the quantity of sand and gravel which might have been removed and sold during the life of the injunction, and the price which could have been obtained for it, is altogether too uncertain, indefinite and unsatisfactory to furnish a definite basis for the estimation of damages. The quantity of sand and the intervals of its deposit are largely left to conjecture. The wind and waves deposited it on the beach, and if it was immediately removed it could be used, but if not, it washed back in the lake and was lost. At times for days, and even weeks, no deposits whatever were made. In other words, the accumulations were governed by the condition of the weather. No attempt was made by appellant to average the amount of the accumulation; and even if that had been done, the evidence shows that some of it was deposited in the streets and some of it in front of block 12, which did not belong to Mason, a considerable distance north of his property. There is nothing, therefore, in the evidence to show how many days

from September 25, 1884, to July 13, 1885, sand or gravel could have been obtained or sold after being obtained. Mason himself testified he could not tell how much he sold; that he kept no books except for a few months in 1888 and 1889, and did not even know what those books show even for that period; that sometimes the money for the sand was paid to him, sometimes to the hired man, sometimes to his children, and sometimes it was not paid at all. The most that he could say was, that before the injunction he took from $15 to $70 worth of sand per day and after the injunction from $15 to $40 per day. Conceding that the testimony in this record tends to show that some loss was occasioned by the injunction on the second item in appellant's suggestion of damages, it is impossible to definitely fix the amount of such loss. Nor can it be fairly said that it exceeded the sum allowed by the superior court. In fact, we think that estimate, $500, is quite as large as the testimony would, in any view, sustain.

The third item is based upon an alleged filling up of the defendant's (Mason's) lawn with sand drifting upon it from accumulations outside of his enclosure while the injunction was in force, in consequence of which, sand blew over the fence upon his lawn. The evidence shows that sand drifted all over that section of the country as snow drifts, and had been doing so for many years. One witness testified that from the time Mason first made his lawn he had to shovel sand from the fence to keep it out of his yard, and this he had kept up for seventeen years; that the lawn would be covered with sand the next morning after it had been cleared off, and that there was a continual sand storm. Moreover, the injunction did not restrain Mason from removing the deposit outside of his fence to prevent its drifting upon his yard, or from building a close fence to protect his lawn. The city could not be held responsible for his negligence or failure to take such steps for his own protection, nor for unusual wind

storms. The proximate cause of the injury was the heavy winds which blew upon the lake shore, and not the issuing of the injunction. Damages recoverable for the wrongful suing out of a writ of injunction must be such as naturally and approximately result therefrom, and remote or speculative damages cannot be taken into consideration. There is also an entire absence of evidence to show the amount of the injury claimed under this item, and even if the proof was otherwise satisfactory, no recovery could be had.

There is no substantial merit in this appeal, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*