## Jerome G. Leavitt, Plaintiff in Error, v. H. B. Lusch, Defendant in Error.

### Gen. No. 20,492.

1. INJUNCTION, § 299*—*when question as to depreciation in value of collateral after sale enjoined material.* On a suggestion of damages by the pledgee of stock, pledged as collateral for a debt of the pledgor, based on the theory of a lost opportunity to sell the stock pursuant to the terms of the pledge, such loss of opportunity being alleged to have been caused by the pledgor's act in securing an injunction against the sale of the collateral which he subsequently dismissed, the questions as to the value of the stock at the time the injunction was issued and whether it subsequently depreciated are material.

2. INJUNCTION, § 299*—*when evidence insufficient to show depreciation in collateral after sale enjoined.* Evidence examined in suit to recover damages claimed to have accrued through loss of opportunity to sell pledged stock by reason of pledgor having secured injunction against sale, and *held* insufficient to show depreciation in value of the stock after the issuance of the injunction.

3. INJUNCTION, § 301*—*what evidence inadmissible to show value of corporate stock.* The amount bid for corporate stock at a public vendue is not legal evidence of its value.

Error to the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Reversed. Opinion filed May 11, 1915.

**Statement by the Court.** Plaintiff in error, Leavitt, filed his bill of complaint seeking among other things an injunction enjoining defendant in error, Lusch, and others from selling certain stocks held by Lusch as collateral security to three of Leavitt's demand promissory notes for $12,000, $6,500 and $17,500 respectively, aggregating $36,000. The first two notes were secured by 80 and 105 shares respectively of the capital stock of the Twin Tree Lumber Company,

and the other note by 100 shares of the Leavitt Land & Lumber Company.

Notice had been given that the stock would be sold on August 15, 1912, and on that date the bill was filed and a temporary injunction granted restraining sale of the stock. On December 27, 1912, the bill was dismissed on Leavitt's own motion "without prejudice," and thereupon the injunction was dissolved and defendants were given leave to file suggestions of damages. Notices of sale were again given, pursuant to which the stock was sold at auction on January 2, 1913, to Lusch, the only bidder, for $18,000. Later Lusch filed suggestions of damages, based on the theory of "a lost opportunity" to sell the stock for the amount due on the notes, his claim being that but for the issuance of the injunction the stock could and would have been sold August 15, 1912, for said amount pursuant to an agreement between Lusch and three other stockholders of the Twin Tree Lumber Company. The agreement was to the effect that if within ninety days from its execution, May 21, 1912, the holders of Leavitt's outstanding notes (including a note not here involved), amounting approximately to $48,000, secured by 245 shares of the Twin Tree Lumber Company and 100 shares of the Leavitt Land & Lumber Company, should offer said securities for sale, then Adams, one of the parties to the agreement, was authorized to purchase the same for their "joint account not exceeding the total sum of $48,000 for all said securities."

The matter was referred to and heard by a master in chancery, whose findings and conclusions were in accordance with such theory of damages, and who found them to be $19,679.91, being the difference between the principal and interest of the notes and the amount bid for the stock. The court's decree overruled most of the exceptions to the master's report and assessed the damages at $18,000 (the difference

between said bid and the principal of said notes), conditioned, however, on the right of Leavitt to redeem said stock by satisfying the notes and costs of reference within ninety days. This writ of error seeks a reversal of said decree.

BULKLEY, GRAY, MORE & TALLMADGE, for plaintiff in error.

EDMUND S. CUMMINGS, for defendant in error; HARRY G. COLSON, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

It is unnecessary to consider any of the points urged as error except whether any damages were proven. If we assume that an injunction will be deemed as wrongfully sued out where complainant dismisses his bill of complaint without consent of the defendants and without adjudication of its merits, still the record before us discloses no adequate proof of damages and also that they were assessed upon an untenable theory.

The theory upon which the master reached his conclusions and the court approved his report was a mistaken one. It was that the value of the stocks was not material to the issues and that damages were assessable upon the theory of "a lost opportunity." Such theory might be applicable where performance of a contract for sale of stock by the owner thereof is prevented and defeated by an injunction wrongfully sued out, and loss ensues from depreciation in its value or from inability thereafter to obtain as good a price; but that is a situation entirely different from the one presented here, where the right of sale is not incident to ownership but to the power to sell collaterals. In such a case, the real question is what was their value when a sale was prevented and was there any subsequent depreciation thereof?

Even if the theory of a lost opportunity were applicable, still the agreement which furnished the basis of the theory was one merely for the protection of the parties to it and not one for the sale of stock. It did not obligate Adams to purchase the stocks for a specific sum. It merely authorized him to pay "not exceeding $48,000," manifestly contemplating payment of no greater sum than necessary to acquire them in the event they were offered for sale. Adams having testified that he was able to comply with the agreement, the master found he could and would have bid an amount equal to the principal and interest of the notes in question, amounting to $37,679.91, had he been the *highest bidder* at the proposed sale; but, in the absence of any other proof on the subject, or that others intended to and would have bid against him, it was not a legitimate inference that Adams would in any event have bid such sum, or, as found and held by the master and sustained by the court, that because Lusch had the right to bid he would have bid against Adams until the latter had bid said amount. Such testimony was not only incompetent, but did not justify the conclusion that the injunction prevented the realization of that amount on August 15, 1912, or any other time. The theory, therefore, on which damages were assessed was not only untenable but unsupported by proof. Damages assessed upon such a theory could not be deemed otherwise than remote or speculative. "Damages recoverable for the wrongful suing out of a writ of injunction must be such as naturally and approximately result therefrom, and remote or speculative damages cannot be taken into consideration." *Chicago Title & Trust Co. v. City of Chicago*, 209 Ill. 172; Sutherland on Damages, vol. II, p. 69; High on Injunctions, vol. II (2nd Ed.) sec. 1663.

The true test of whether damages were sustained by issuance of the injunction was whether the stocks depreciated in value while it was in force. But of that

there was absolutely no proof. The stocks had no established market value. In such event resort must be had to the next best evidence by showing the value of the property and business of the corporation less the amount of its liabilities (Cook on Corporations, vol. II (5th Ed.) sec. 581; *McDonald v. Danahy,* 196 Ill. 133); and it is competent to prove the value by the opinion of witnesses who have the requisite knowledge, or by such facts as exist tending to show value. Sutherland on Damages, vol. I, pp. 798-800.

Evidence was adduced by respondent tending to show that the value of the Twin Tree Lumber Company stock was worth from $250 to $300 per share, and that there was no depreciation thereof while the injunction was in force. The evidence consisted of detailed statements of the assets of the corporation and its liabilities by its officers, and their testimony and that of another experienced timber man as to values. The list of assets and values need not be here set forth, but the net value testified to exceeded three times the company's capital stock. The evidence also tended to show that said stock had in fact appreciated in value.

In rebuttal there was received in evidence, as exhibits, subject to objection, the company's trial balances for the four years previous to January 2, 1913, and its auditor's report made three years previous thereto, which Lusch testified were sent to him as a stockholder. They have not been preserved in the record among the other exhibits. We have, therefore, no means of determining what they contained except as revealed on cross-examination of defendant in error's witness Goodman, who, as an expert on stock values, was permitted to base his opinion thereon. But we fail to see their admissibility unless they tended to impeach the testimony of the officers as to what were the actual assets and liabilities of the corporation and the values of such assets. There is nothing in the

record to indicate that they had any such tendency and they, therefore, do not appear to have been competent evidence. If they were not competent, then the testimony of the so-called expert based thereon was not competent. These trial balances do not appear to have been based on actual values for there was undisputed testimony that no inventory had been taken of the company's property within three years. It is difficult to see how a trial balance not based on inventoried assets would have any tendency to disprove direct and positive evidence of the actual assets and their values.

But, even if it had such tendency, direct evidence of so many witnesses personally familiar with the business and the nature and value of the assets, would not be deemed overcome by evidence that was by no means conclusive or even convincing. Goodman, basing his opinion thereon, valued the stocks at $50 per share. But an analysis of his testimony discloses that it was in part based upon assumptions rather than evidence, and even if his opinion was correct, neither his testimony nor the trial balances, so far as the record discloses, showed any change in the value of the stocks after the issuance of the injunction. In any view of the evidence it fails to disclose the thing essential to show damages, namely, a depreciation of the value of the stocks after injunction was granted.

As the evidence adduced before the master in support of the claim for damages consisted in the first instance merely of proof of said agreement, the ability and willingness of Adams to comply therewith on August 15, 1912, the sale of the stocks on January 2nd for $18,000, and the ownership of the notes by Lusch on which nothing had been paid, respondent might well have declined to introduce any proof on his part. But he having seen fit to prove by competent and the best evidence the value of the Twin Tree Lumber Company stock and the fact that it had not depreciated in value, and that evidence not having been directly

controverted or impeached by competent or convincing evidence, and there having been no proof of the depreciation of the Leavitt Land & Lumber Company stock, whatever its value, there was no adequate proof, if any at all, that any damages were sustained by reason of suing out the injunction. The court should have sustained the exceptions to contrary findings and conclusions of the master.

It is unnecessary to discuss other questions, but it might be added that the amount bid for stock at public vendue is not legal evidence of its value. The fact that Lusch bid $18,000 for the stock on January 2nd, when he was the only bidder, could not be taken as proof of its value on that date, or used as a basis for determining a loss even on the theory of a lost opportunity. For aught that appears in the record, too, the stock might have been sold for more than the indebtedness it was pledged to secure, and, there being no proof of plaintiff in error's insolvency, the notes may have been collectible without loss even if the collateral had been worthless. The decree will be reversed.

*Reversed.*