## Sidney S. Gorham and Henry W. Wales, Appellees, v The Massillon Iron & Steel Company, Appellant.

## Gen. No. 23,165.

1. CORPORATIONS, § 156*—*when transfer of stock properly refused after garnishment.* Where, prior to the demand of persons, claiming to hold certain stock under assignment, that the stock be transferred to them, the corporation is served with a garnishee summons in suits instituted against the assignor in which attachments in aid were issued, the stock is *in custodia legis* and the corporation is justified in refusing a transfer thereof.

2. ATTACHMENT, § 263*—*when judgment may not be collaterally attacked.* An assignee of stock, seeking to hold a corporation liable for conversion for refusing to transfer stock which it refused to transfer because of having been previously served with garnishee summons issued by a plaintiff in attachment in aid against the assignor, cannot set up that the refusal was unjustified because the attachment proceedings were void for want of jurisdiction, where the question of jurisdiction was raised by the assignor in those proceedings and judgment was entered against him.

3. GARNISHMENT, § 64*—*what are duties of garnishee as to property.* A garnishee is merely a custodian of the property and must not prejudice the rights of either of the parties seeking the property.

4. GARNISHMENT, § 64*—*duty of garnishee to call to attention of court conflicting claims.* The garnishee must call to the court's attention all conflicting claims to the property and cannot set up. the judgment rendered against him in an action by one whose interest he has concealed from the court.

5. TROVER AND CONVERSION—*when garnishee guilty of conversion.* Where a garnishee ·fraudulently conceals from the court the interest of a claimant in the property, such concealment is a denial of the claimant's ownership which constitutes a conversion.

6. FRAUDULENT CONVEYANCES, § 19*—*when assignment of personalty not in fraud of creditors.* An assignment of personalty cannot, on appeal, be said to have been made for the purpose of defrauding creditors, where the record fails to show that the assignor was without other funds to meet his liabilities.

7. FRAUDULENT CONVEYANCES, § 180*—*who may not set up fraud.* One who is not a creditor cannot set up that an assignment was made for the purpose of defrauding creditors.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

8. TROVER AND CONVERSION, § 38*—*what considered in determining value of corporate stock in absence of market value.* In an action for the conversion of corporate stock which has no ascertainable market value, it is proper, in determining its value, to take into consideration the value of the company's assets, its liabilities and its earning power for a number of years prior to the conversion.

9. TROVER AND CONVERSION, § 39*—*when amount for which property of corporation will sell at forced sale not controlling in ascertaining value of stock.* In an action for the conversion of corporate stock, in ascertaining the value of such stock, evidence that at a forced sale the company's assets would not bring a sufficient amount to cover its liabilities is not controlling where it appears that the company was then and has been since a going concern and that it was in a prosperous condition and had large earnings for a number of years prior to its financial difficulties, and that the latter were caused by the defalcation of one of its officers.

10. TROVER AND CONVERSION; § 39*—*when finding as to value of corporate stock warranted by evidence.* In an action to recover for the conversion of corporate stock, where the evidence showed that the book value at the date of the conversion was $40 per share and tended to show an approximate good-will value of $12 per share, it cannot be said that the court erred in fixing the value of the stock at $51.

BARNES, J., dissenting.

Appeal from the Superior Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1917. Affirmed. Opinion filed March 12, 1918.

MATZ, FISHER & BOYDEN, and VICTOR ELTING, for appellant.

AMOS C. MILLER, for appellees.

MR. JUSTICE MCDONALD delivered the opinion of the court.

This is an appeal from a judgment for $35,700 recovered by Sidney S. Gorham and Henry W. Wales against the Massillon Iron & Steel Company (defendant below), in an action of trover for the wrongful conversion of 700 shares of its capital stock.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

In one of the counts of the declaration it was alleged that the conversion took place on April 30, 1912, while in another the conversion was alleged to have occurred on February 28, 1913.

The defendant is an Ohio corporation, with its principal offices and plant located at Massillon, Stark county, Ohio. Prior to March 15, 1912, Frank F. Fisher, who was vice president and Chicago sales agent of the defendant company, and who was the owner of record of 1,575 shares of its capital stock, executed for the accommodation of the defendant company four promissory notes, aggregating upwards of $11,000. These notes, which were renewals of previous ones executed by said Fisher for a similar purpose, were discounted for the defendant company by certain banks in Massillon, and to secure their payment 210 shares of the said Fisher's stock were pledged. At the time these latter notes were given, the defendant company was in financial straits, and, to relieve the situation, several plans of reorganization were proposed, to all of which the said Fisher objected. His antagonistic attitude in this regard hampered the reorganization for a time and gave rise to strained relations between him and the other officers of the defendant company and culminated in Fisher's discharge as sales agent.

On March 19, 1912, two of the Massillon banks, each holding one of the aforesaid notes, instituted suit thereon and attachments in aid thereof against the said Fisher in the Common Pleas Court of Stark county, Ohio, and served the defendant company as garnishee. It appears that these suits were brought at the instance of the defendant company.

On March 30, 1912, defendant company wrote Fisher a letter in which it stated that it had been informed by Fisher's attorney that he no longer owned the stock.

On April 18, 1912, defendant company filed answer as garnishee, setting forth that there stood on its

books 1,575 shares of its capital stock in the name of the said Fisher.

On April 20, 1912, similar proceedings were commenced by two other Massillon banks, each holding one of the remaining notes executed by Fisher, and the defendant company was again served as garnishee.

On April 30, 1912, plaintiffs presented to defendant company at Massillon certificates for 700 shares of its capital stock duly assigned to them in writing by Fisher, 600 shares of which were assigned under date of March 15, 1912, and 100 under date of March 19, 1912, and demanded a transfer thereof on the books of defendant company and that a new certificate be issued in their name therefor. Defendant company refused to comply with this demand, assigning as its reason therefor the pendency of the attachment suits hereinabove referred to in which it had been served as garnishee. A similar demand had been made by plaintiffs on defendant company on April 26th, which was refused because the books of the defendant company were then in Cleveland.

On June 1, 1912, the defendant company filed its answers in the two last-mentioned proceedings, which said answers were similar to those filed on April 18th in the first two suits.

On August 6, 1912, before final judgment was rendered in the aforesaid attachment suits, Fisher filed a petition in equity in Stark county, Ohio, against the defendant company and the Massillon banks aforementioned, alleging that he made and delivered to the defendant company the four said promissory notes, which were then past due, for the accommodation of the defendant company, and without any consideration to him whatsoever, and prayed that the defendant company be compelled to pay same.

On October 9, 1912, defendant company filed its amended and supplemental answers in the foregoing attachment suits, in which it alleged that since the

filing of its original answers, 210 shares of stock which then stood in the name of the said Fisher had been sold by the pledgees thereof and transferred on its books out of the name of Fisher, and that there then stood on the books of the company in his name 1,365 shares of its capital stock.

On February 28, 1913, judgment was entered against defendant company as garnishee, on its answers in the aforementioned attachment and garnishment proceedings, and in the judgment order the defendant company was directed to issue a certificate for 1,365 shares of its capital stock, then standing in the name of the said Fisher, to the sheriff of Stark county, and recited further that defendant company, having already complied therewith, was discharged as garnishee.

On April 15, 1914, the court entered a decree in the proceeding commenced by Fisher on August 6, 1912, in which it found that the defendant company was primarily liable on the notes in question, and ordered and decreed that it pay the amounts due thereon, and that the banks cancel and surrender them to the company. This decree was later affirmed on appeal by the defendant company. The order of affirmance denied Fisher's motion for statutory damages, reciting that there was reasonable ground for the appeal, although it did not set forth the nature thereof. Subsequently the attachment suits were released, the certificate of stock theretofore issued to the sheriff of Stark county was canceled and returned to the defendant company, who then for the first time notified plaintiff of its willingness to transfer upon its books the 700 shares of stock assigned to them by Fisher.

It is contended by defendant company that under the circumstances it was not guilty of a conversion of the said stock; that the said Massillon banks were creditors of Fisher on the notes in question and were pursuing their legal rights in prosecuting the said

suits; that by the service of the garnishee summons on it, Fisher's stock then appearing of record on its books was *custodia legis,* and that hence it was warranted in denying a transfer thereof to plaintiffs as assignees, pending the outcome of the said suits. In support thereof, we are referred to the rule laid down in *Spangenberg v. Nesbitt,* 22 Cal. App. 274, 134 Pac. 343, and in *Mundt v. Commercial Nat. Bank of Ogden,* 35 Utah 90, 99 Pac. 454, that the officers of a corporation may rightfully refuse, for the time being, a requested registry of stock by the assignee thereof, when notified to do so by a third person who claims some interest therein which might be lost or injuriously affected by the transfer; that with notice of such conflicting claims, it is the privilege and the duty of the corporation or its officers, if there be a reasonable doubt as to the respective rights of the contending claimants, to refuse or delay registry to either party until the lapse of a reasonable time within which the merits of the controversy may be determined. In our opinion, these authorities enunciate a correct principle of law. The garnishee summons having been served on the defendant company prior to the date of the demand by plaintiffs as the assignees of the stock, the defendant company was justified in refusing a transfer thereof, the stock then being *custodia legis,* and hence there was no conversion on April 30, 1912. *National Bank of New London v. Lake Shore & M. S. Ry. Co.,* 21 Ohio St. 221.

Plaintiffs argue, however, that the said attachment proceedings were void for want of jurisdiction because of a defective acknowledgment in the affidavit, and that hence it affords defendant no justification for its refusal to make the transfer of stock. It appears that in said proceedings Fisher entered a special appearance to question the jurisdiction of the court, but the court found that it had jurisdiction, and entered judgment against him. Under such circum-

stances, the court having expressly passed upon the question of jurisdiction, its finding is not subject to collateral attack. *Swift v. Yanaway*, 153 Ill. 197; *Figge v. Rowlen*, 185 Ill. 234.

The next question presented by this record is, whether or not there was a conversion of the said stock by defendant on February 28, 1913, as charged in the declaration.

Defendant company's only justification for having issued the stock certificate to the sheriff of Stark county is based on the judgment entered against it in the aforementioned attachment proceedings, wherein it was served as garnishee. Its conduct as such therefore becomes material.

A garnishee is a mere stakeholder or custodian of the property or funds sought to be reached, and by reason of his position he must stand equally indifferent to both parties to the controversy, refraining from any acts which might prejudice the rights of either. It is also his duty to bring to the attention of the court any and all conflicting claims made to the property in his custody, to enable the court to determine the rights of the claimants. Failing therein, the garnishee is precluded from setting up the judgment rendered against him in an action by a third party whose interest he has concealed from the court. *Greenwich Ins. Co. v. Columbia Mfg. Co.*, 73 Ill. App. 560, wherein the court held, p. 568:

"If a garnishee, with notice of an assignment to a third party of the debt garnisheed, fails to bring it to the attention of the court, the judgment rendered against him will be no bar to a suit by such third person. [Citing Drake on Attachments, secs. 607, 608; 8 Am. & Eng. Encyc. of Law, 1183.]

"The authorities are abundant in support of that holding. Nor will the mere fact that the assignee knew of the pendency of the garnishee proceedings and might have intervened to assert his right, relieve the garnishee of the duty to set up in his answer the

fact of his having received information of the assignment.''

It appears from the record that the defendant company was aware of its primary liability on these notes, as shown by the resolution spread of record in 1910, whereby it agreed to save the said Fisher harmless thereon. Notwithstanding this fact, and its duty to pay same, it procured suits to be brought on said notes against Fisher by the Massillon banks and caused itself to be summoned as garnishee. In its answers filed as such, defendant company failed to disclose the claim of the plaintiffs to this stock, despite its admitted knowledge that Fisher no longer owned it, and the further fact that on April 30, 1912, plaintiffs, as assignees, demanded a transfer thereof. Even as late as October 9, 1912, when defendant company filed its supplemental answers as garnishee, no mention was made of the assignment thereof, although it was stated therein that 210 shares of Fisher's stock pledged as security for the payment of the said notes had been sold and transferred on its books, leaving 1,365 shares still in his name.

Defendant company having caused the attachment suits to be instituted against Fisher and against itself as garnishee, and having fraudulently failed to disclose to the court by its answers the assignment of the said stock, as a result of which it was transferred on the company's books and a certificate therefor issued to the sheriff of Stark county, it thereby precluded itself from setting up this proceeding as a justification for the said transfer. Such fraudulent concealment from the court of plaintiffs' interest in said stock was clearly a denial of their ownership therein, which constituted a conversion. *London, Paris & American Bank v. Aronstein,* 117 Fed. 601.

The further point is made that the assignment of stock by the said Fisher to plaintiffs was made for the purpose of defrauding his creditors, and hence

void. With this contention we cannot agree, for the reason that the record fails to show that he was without other funds or means to meet his liabilities to his creditors. Nor does it appear that Fisher had any creditors except as a result of his secondary liability to the banks on the notes in question. However, the defendant company not being a creditor, it cannot question this assignment.

It is also contended that the damages awarded are excessive.

The stock in question had no ascertainable market value. Therefore, in determining the value thereof, the court properly took into consideration the value of the defendant company's assets, its liabilities, and its earning power for a number of years prior to the conversion. This method of computation was approved in *McDonald v. Danahy,* 196 Ill. 133, wherein the court held:

"It appeared that the stock had no ascertainable market value, and it became necessary to prove its value by the next best evidence. By ascertaining the value of the assets of the company and the amount of its liabilities and the dividends paid, the value of its capital stock could be determined with reasonable certainty."

This rule was followed in *Leavitt v. Lusch,* 192 Ill. App. 504, the court citing Cook on Corporations (5th Ed.), vol. 2, sec. 581, and Sutherland on Damages, vol. 1, pp. 798-800.

It is argued, however, that because of its financial embarrassment at and prior to the time of the conversion, defendant company's common stock had no value, as shown by the testimony of its expert witnesses. This testimony was to the effect that, at a forced sale, the assets of the company would not bring sufficient to cover all its liabilities. The defendant company, however, was then and has since been a going concern, and hence this testimony was not con-

trolling. The evidence shows that for a number of years prior to its financial difficulties, due principally to the defalcation of one of its officers, defendant company's net earnings were large and the company was in a prosperous condition.

The book value of the stock, as shown by the financial statement of the defendant company's condition as of December 21, 1912, which it was stipulated showed its financial condition as of February 28, 1913, also, amounted to $40 per share. The evidence tended to show a good-will value of approximately $12 per share. The court fixed the value of the said stock at $51 per share. In view of all the evidence, we cannot say that the court erred in fixing the value of the stock at that figure.

Other errors have been assigned, which upon careful examination we deem it unnecessary to discuss, except to say that they are without merit. Accordingly the judgment will be affirmed.

*Affirmed.*

Mr. Justice Barnes dissenting.

I do not think trover will lie on this state of facts.