Helen M. Holmes, Plaintiff-Appellee, v. Birtman Electric Company, et al., Defendants-Appellants.

Gen. No. 47,639.

First District, Third Division.

May 15, 1959.

Released for publication July 1, 1959.

Hopkins, Sutter, Owen, Mulroy & Wentz, of Chicago (William C. Childs, of counsel) for Birtman Electric Company, and Wilson, Paul & Hansen, of Chicago (George A. Hansen, of counsel) for First National Bank of Chicago, defendants-appellants.

Irving M. Greenfield and Irving D. Levin (Irving D. Levin, of counsel) for Helen M. Holmes, plaintiff-appellee.

JUSTICE BURKE delivered the opinion of the court.

Helen M. Holmes brought an action against the Birtman Electric Company and its stock transfer agent,

The First National Bank of Chicago, for damages resulting from their refusal to reissue Birtman Stock certificates in the name of plaintiff alone in place of certificates standing in the name of plaintiff and her deceased father, Charles Hansel, as joint tenants. Plaintiff and defendants moved for a summary judgment. The court sustained plaintiff's motion for a summary judgment on the issue of liability. The judgment order provided that the damages, if any, were to be assessed at a hearing limited to that issue. A trial of the issue of damages resulted in a judgment against the defendants for $6,890.83. Defendants, appealing, ask that the judgment against them be reversed and that judgment be entered in their favor. In her cross appeal plaintiff asks that judgment be entered in her favor for $23,598.75, $21,576 or $20,-901.75, plus interest.

There is little if any dispute about the facts. On December 10, 1953, Birtman issued to the plaintiff and her father, Charles Hansel, as joint tenants with the right of survivorship, 2697 shares of its common stock. The father died on April 4, 1955, leaving him surviving two daughters, the plaintiff and her sister Marion Lenox. On September 15, 1955, the bank was served with summons as a defendant in a suit in the Superior Court of Cook County filed by Marion Lenox against plaintiff herein, her husband James Holmes and the bank. The verified complaint for a declaratory decree alleged that plaintiff herein (defendant in the Lenox case) had by fraud, threats and undue influence, caused her incompetent father, Charles Hansel, to transfer the stock from his own name to the names of himself and Helen Holmes, as joint tenants. The complaint prayed, among other things, that the court declare that Helen Holmes holds such shares in trust for the heirs of Charles Hansel, and further prayed that the bank and others be temporarily en-

74

joined from transferring, assigning, selling, encumbering or dissipating the stock. At a hearing in the Lenox case on a request for a temporary injunction on September 19, 1955, the chancellor decided that the facts alleged justified a complete examination and referred the matter of the issuance of a temporary injunction to a master in chancery, requiring that his report be filed within thirty days thereafter.

On September 23, 1955, plaintiff delivered the certificates for the 2697 shares of stock to the bank, duly endorsed, together with a certified copy of the death certificate of her father and the Attorney General's consent to a transfer or assignment of the stock to the plaintiff and demanded that the bank transfer the shares to plaintiff. On the same day plaintiff's attorney directed a letter to the bank renewing the demand. The transfer demanded was, in effect, from plaintiff as the surviving joint tenant to her individually. It was a demand for the reissuance of new certificates for the stock to the same holder. No demand or request for a transfer to other than plaintiff was made. The bank's written response dated October 6, 1955, stated that it would be "unable to comply with your request that we transfer the stock into the name of your client until the litigation [the Lenox case] is disposed of." The bank refused to transfer or reissue the stock to the name of plaintiff alone. It was not requested to transfer to anyone else nor did it refuse to make such transfer. The position taken by the bank was that the demand for transfer from plaintiff as surviving joint tenant to her individually could not be complied with until the Lenox case was disposed of.

After plaintiff's demand to have the stock reissued in her own name was refused, she made her demand for reissuance in writing without indicating any intention to sell or otherwise dispose of the stock. She

stated that she would hold the bank accountable for loss suffered by reason of its failure to transfer the stock to her. She received and cashed two dividend checks paid on the stock, one dated November 23, 1955, for $404.55 and the other dated December 31, 1955, for $1,078.80. Plaintiff made no attempt whatsoever and gave no indication of a desire to sell or dispose of or realize upon any of the shares of stock, or to place any of the shares with a broker for sale or otherwise to discover whether a sale thereof could be effected. Plaintiff did not make any attempt to cause an order to be entered in the Lenox case permitting, during the pendency thereof, the reissue or transfer of all or any part of the shares to the name of plaintiff or to the names of any purchasers or other persons. On the contrary, it was found as a fact in the Lenox case by the master in chancery that there was not a scintilla of evidence that Helen Holmes, her husband and the bank, threatened or were going to sell, transfer or dispose of any of the stock. The reissue or transfer of the stock was delayed pending the determination by the Superior Court of the questions which the bank with notice of the Lenox case would have had to decide before transferring the stock to plaintiff's name, namely, whether the new certificates should be issued at all and if so if they should be issued to her as trustee, or to her absolutely, or to other persons, or in some other way. On January 16, 1956, the chancellor in the Lenox case denied her motion for a temporary injunction and entered a decree dismissing her complaint for want of equity. Shortly after the expiration of the thirty days' period provided by Section 68.3 [Ill. Rev. Stats. ch. 110] of the Civil Practice Act, the bank proceeded to reissue the 2697 shares of Birtman stock in the name of plaintiff individually. The new certificates were dated February 20, 1956, but were not actually delivered to

her until March 1, 1956. She retained these shares until May 9, 1957, when, pursuant to the merger of Birtman with the Whirlpool Corporation, she received stock in the latter corporation in exchange for her Birtman stock. At that time she elected to have the new certificates issued in the names of herself and her husband as joint tenants.

The first point presented by the defendants is that their temporary delay in transferring the stock in accordance with plaintiff's demand was reasonable and justifiable in view of the pending litigation against the bank, as transfer agent, seeking to enjoin the transfer of this stock and to have a trust declared with respect to it, and that they were not obligated to act at their peril by prejudging the issues presented in the Lenox case. Plaintiff asserts that the defendants, refusing to transfer the stock of the shareholder, are guilty of a conversion thereof, liable in trover and must answer in damages to the holder of the stock to the extent of the market value thereof on the date of the demand or conversion. Plaintiff insists that there was no triable issue of fact and that her motion for summary judgment should have been sustained in its entirety. On similar reasoning she contends that her motion for judgment on the pleadings should have been allowed. Plaintiff asserts that the bank's refusal to reissue the stock was absolute. The record sustains defendants' position that the refusal was only temporary. The reissue was delayed pending the developments in the Lenox case. The letter of October 6, 1955, from the bank to plaintiff's attorney stated that the bank would be unable to comply with the request to transfer the stock to the name of plaintiff "until the litigation is disposed of." Neither Birtman nor the bank could obtain any benefit or advantage from refusing to transfer or reissue plaintiff's shares. Such refusal was only to avoid liability which

might have arisen if such transfer or reissuance had been effected prior to the determination of the pertinent issues in the Lenox case. Furthermore, plaintiff retained all the benefits of a stockholder. She still received her dividends, retained all voting rights and continued to have all of the incidents of ownership of the stock during the period of delay. One of the principal issues in the Lenox case was the proper disposition of the Birtman stock. Upon receiving the summons and complaint against it in that case, the bank maintained the status quo, leaving what should be done for the court to decide. It did not take a position or perform any act for or against any party to the lawsuit. When the court rendered its decision as to the preliminary injunction, the bank was free to reissue the new certificates. If the bank had complied with plaintiff's request, it would have done so at its peril.

██ In Illinois a corporation and its agents are trustees with respect to the registration of transfers of its securities and are liable for injuries resulting from their failure to discharge such fiduciary responsibilities. Allmon v. Salem Building & Loan Ass'n, 275 Ill. 336. In the exercise of their fiduciary duty, corporations and their agents act within their rights and incur no liability by declining in good faith to make an immediate transfer on the corporate books in favor of a person demanding registration and presenting a stock certificate and other papers in connection with the transfer, where the corporation has reasonable grounds for doing so, presents adequate reasons for its refusal and supports it by evidence. This is the "rule of reasonable delay." See People v. Elgin Motor Car Corp., 209 Ill. App. 601; Gorham v. Massillon Iron & Steel Co., 209 Ill. App. 606 (affirmed on other grounds, 284 Ill. 594); Dickinson v. Griggsville Nat. Bank, 209 Ill. 350; 18 C. J. S. 1049–51,

78

Corporations, Sec. 435 (c). The bank, as stock transfer agent, was given a formal notice of a conflicting claim for the stock. Plaintiff was also served as a defendant. The verified complaint in the Lenox case alleged that plaintiff herein was not the owner of the stock because her father was incompetent when he put it in joint tenancy with her, and because she had induced him to do so by fraud, threats and undue influence. The complaint asked for a declaration of the parties' rights to the stock and that plaintiff herein be deemed to hold the stock as a trustee for the benefit of the heirs of her father. The complaint also prayed that the plaintiff herein and the bank, as transfer agent, be enjoined from transferring or otherwise dealing with the stock pending the outcome of the litigation. The chancellor referred the motion for a temporary injunction to a master in chancery. While the application for the injunction was pending before the master, the demand by plaintiff for the transfer to her as an individual was made. This demand, in effect, asked the bank to prejudge the issues being litigated in the Lenox case. It demanded, in effect, that the bank decide that plaintiff herein actually owned the stock and that she should not be recorded as holding it in trust for the heirs. The bank was required by plaintiff to ignore the outstanding. petition for a preliminary injunction.

In Daily v. Universal Oil Products Co., 76 F. Supp. 349, the court, applying Illinois law, said (371):

"A corporation that has actual and constructive knowledge of an equitable interest of a third party in its own stock then outstanding in the name of a trustee, cannot permit a transfer of the stock in violation of the trust. The legal principles that govern the transfer of stock standing in the name of a trustee are stated in Fletcher Cyclopedia Corporations, Vol. 12, page 479, Section 5546: 'If the corporation has

actual or constructive notice that the stock is held in trust, it becomes its duty to use reasonable diligence to ascertain whether the trustee has authority to transfer the stock before permitting the transfer to be made, and it will be liable to the cestui que trust, if without inquiry, it permits a transfer in violation of the terms of the trust.' . . . The rule is further stated in Fletcher Cyclopedia Corporation, Vol. 12, page 507, Section 5552: 'Where a corporation acts in good faith and without negligence in allowing a transfer by one who appears to be the absolute owner of shares, it is not liable to one having a mere equitable title by virtue of a prior unregistered transfer, or otherwise, of which it has no notice. But it is liable if it has actual notice of the equitable title, or if the form of the certificate or other circumstances are sufficient to put it upon inquiry. These principles apply to transfers by persons holding the title to shares as trustees, executors or guardians.' The rule stated above has been followed in the decisions of the courts of a majority of the states as well as in the decisions of the Federal Courts."

▇ Once a party has been placed on notice that injunctive relief against the performance of a particular act is sought, the act can be performed by the party only at the risk that the court may order the status quo to be restored. In Jones v. Securities & Exchange Commission, 298 U. S. 1, (pp. 15–18) the court said:

". . . The rule is well settled, both by the courts of England and of this country, that where a suit is brought to enjoin certain acts or activities, for example, the erection of a building or other structure, of which suit the defendant has notice, the hands of the defendants are effectually tied pending a hearing and determination, even though no restraining order or preliminary injunction be issued. . . . The conclu-

sion to be drawn from all the cases is that after a defendant has been notified of the pendency of a suit seeking an injunction against him, even though a temporary injunction be not granted, he acts at his peril and subject to the power of the court to restore the status, wholly irrespective of the merits as they may be ultimately decided. 1 High on Injunctions (4th ed.), Sec. 5 (a)."

In Gribben v. Interstate Motor Freight System Co., 18 Ill.App.2d 96, the court said (102):

"The rule in this state is that after a suit for injunction has been filed and the court has acquired jurisdiction of the person, if the defendant does any act which the complaint seeks to enjoin, he acts at his peril and subject to the power of the court to compel a restoration of the status quo ante, or to grant such other relief as may be proper under the particular circumstances of the case."

■ We have carefully read the cases cited by the respective parties. The cases cited by plaintiff do not support her position under the factual situation presented. Her cases deal with a refusal on the part of a corporation or its transfer agent to recognize a change of ownership from one holder to the other, such as a seller to a purchaser or from a donor to a donee. In the instant case the only demand made was to have the stock she already owned reissued in her own name. More than five months elapsed between the father's death and the commencement of the Lenox suit. About a week after that and only four days after the reference to the master, plaintiff made her demand. From that time until the conclusion of the Lenox case and the issuance of the new certificates, less than five months passed. Thus, the period of plaintiff's delay in seeking to have the stock reissued in her own name after her father's death substantially

exceeded the period of the bank's delay in complying with her demand, and this circumstance is an additional indication that the delay was reasonable. From the facts and authorities it is clear to us that the bank's delay in transferring the stock to plaintiff individually was reasonable and justified. There is no basis in the record for a claim that the defendants are guilty of a conversion of the stock, or that they are liable in a common law action of trover.

Defendants urge that their delay in complying with the demand for a reissuance of the stock caused plaintiff no loss whatsoever. They point out that plaintiff made no move to petition the Superior Court in the Lenox case for leave to sell all or any part of the Birtman stock, and displayed only a desire to have the stock reissued in her own name. Defendants say that as plaintiff was the owner and holder of the stock during the entire period of the temporary refusal to reissue, and has shown no special damages, she cannot have both the stock and its value. As the delay in transferring the stock was reasonable, it is unnecessary to consider this and other points discussed in the briefs. The judgment of the Circuit Court of Cook County is reversed and the cause is remanded with directions to enter judgment for the defendants and against the plaintiff.

Judgment reversed and cause remanded with directions.

FRIEND, P. J. and BRYANT, J., concur.