554

HELEN M. HOLMES, Appellant, *vs.* BIRTMAN ELECTRIC
COMPANY *et al.,* Appellees.

*Opinion filed January 22, 1960—Rehearing denied March 28, 1960.*

HOUSE, C.J., specially concurring.
DAVIS and SCHAEFER, JJ., dissenting.

IRVING M. GREENFIELD, and IRVING D. LEVIN, both of
Chicago, for appellant.

HOPKINS, SUTTER, OWEN, MULROY & WENTZ, of Chi-
cago, (WILLIAM C. CHILDS, of counsel,) for appellee Birt-
man Electric Company, and WILSON, PAUL & HANSEN, of
Chicago, (GEORGE A. HANSEN, of counsel,) for appellee
The First National Bank of Chicago.

Mr. JUSTICE DAILY delivered the opinion of the court:

The plaintiff, Helen M. Holmes, brought an action in
the superior court of Cook County against the defendants,

Birtman Electric Company and its stock transfer agent, the First National Bank of Chicago, to recover damages of $21,756 for their refusal to effect a transfer to her of twelve certificates representing 2,697 shares of record in the names of herself and her deceased father, Charles Hansel, as joint tenants, with the right of survivorship. Plaintiff's motion for summary judgment was sustained to the extent it related to the issue of liability; defendants' motion for summary judgment was denied. The order disposing of these motions provided that plaintiff recover damages, if any, against defendants, as might be assessed against them upon a hearing limited to that issue. A trial before the court without a jury resulted in a judgment in favor of plaintiff and against defendants for $6,890.83. Defendants appealed to the Appellate Court for the First District, seeking a reversal of the order sustaining plaintiff's motion for summary judgment upon the issue of liability and denying their motion for a summary judgment and, also, of the order awarding plaintiff damages. Plaintiff prosecuted a cross appeal, contending that she was entitled to damages of $24,598.75, $21,756, or $20,975. The Appellate Court reversed the judgment and remanded the cause, with directions to enter judgment for defendants and against plaintiff. (22 Ill. App. 2d 72.) We have granted the latter's petition for leave to appeal.

The decisive issue presented is whether the defendants' delay in transferring the stock was justified and reasonable with respect to the factual situation presented. Disposition of the issue requires a narration of the essential facts.

On December 11, 1953, Birtman Electric Company issued 2,697 shares of its common stock to Charles Hansel and Helen Holmes, as joint tenants, with the right of survivorship. Hansel died on April 4, 1955, survived by his wife, Rose, and their daughters, Helen M. Holmes and Marion Lenox, as his only heirs-at-law. Mrs. Hansel died in June 1955. On September 15, 1955, more than five

months after Hansel's death, the First National Bank of Chicago, as transfer agent for Birtman's stock, was served with process as a defendant in an action in the superior court of Cook County, No. 55 S 13710, instituted by Marion Lenox against Helen Holmes, the latter's husband, James Holmes, and the bank. Mrs. Lenox sought a declaratory judgment that the shares of Birtman stock, held in the name of Hansel, or in the names of Hansel and his wife jointly prior to December of 1953, and transferred at that time to Charles Hansel and Helen Holmes, as joint tenants, be held in trust for the benefit of Marion Lenox and Helen Holmes, only heirs-at-law of their deceased parents. The plaintiff in that case, Mrs. Lenox, alleged further that she feared Helen Holmes would dissipate and place beyond the control of the court the stock or the proceeds from its sale and asked for the issuance of a temporary injunction to restrain her sister and the bank, as transfer agent, from selling, transferring, assigning, or in any way encumbering the stock certificates. An order was entered on September 19, referring the question of the issuance of the injunction to a master in chancery, with directions to file his report on or before October 19, 1955.

On September 23, plaintiff, by her attorney, made personal demand upon the bank to cause the shares to be transferred or reissued in the name of Helen Holmes. The demand was accompanied by adequate evidence of Hansel's death and a consent to the transfer of the stock by the Attorney General. The bank refused to honor the request, advising the attorney that the matter had been considered by its officials as well as other attorneys and that no transfer of the stock would be made until the disposition of the litigation pending in the superior court. By a letter dated September 23, 1955, Mrs. Holmes once again made the same demand upon the bank. On October 6, an assistant vice-president of the bank replied, confirming its earlier refusal by stating: "Because of the fact that we are one

of the defendants in a case pending in the superior court of Cook County entitled Marion Lenox v. Helen Holmes, et al., No. 55 S 13710, in which action an injunction has been applied for, we will be unable to comply with your request that we transfer the stock into the name of your client until the litigation is disposed of." The bank's refusal was flat and final.

On November 22, the master submitted his report in Lenox v. Holmes, recommending that a temporary injunction be denied. His report read in part: "There is not a scintilla of evidence that defendants have threatened or are going to sell, transfer, dispose of, conceal, dissipate, or otherwise place in jeopardy any of said * * * stock * * * received by Helen Holmes from her parents." Objections to the master's report filed by Mrs. Lenox were overruled. Thereafter, on January 6, 1956, the court approved the master's report in Lenox v. Holmes, overruled Mrs. Lenox's motion for a temporary injunction and, on January 16, entered a decree dismissing the complaint for want of equity.

The order and decree in Lenox v. Holmes became final on February 16, 1956. Plaintiff's attorney again demanded transfer or reissuance of the 2697 shares of Birtman stock to Helen Holmes and, on February 20, the bank, as transfer agent, issued to Mrs. Holmes new certificates for the shares, conformably to her request. The certificates were delivered to her on March 1, 1956. She retained the certificates until May of 1957 when, pursuant to the merger of Birtman with Whirlpool Corporation, she received shares of stock in the latter corporation in exchange for the Birtman stock.

In the interim it appears that Birtman declared and paid dividends on its common shares of record on November 23 and December 20, 1955. Birtman issued two dividend checks, dated November 23 and December 31, 1955, aggregating $1,483.35, payable to the order of Charles Hansel

(deceased April, 1955). These checks bear the purported blank indorsements of the payee and of Helen M. Holmes.

Based upon the foregoing facts, the plaintiff's second amended complaint alleged that, as the result of the bank's refusal to effect a transfer of the stock or to issue new stock to her in exchange for the certificates previously described, she was restricted from making and unable to effect a lawful sale of the stock, with the approval and authority of the bank, as transfer agent for Birtman, and that any sale of the stock by her without such approval would have been ineffective. She also alleged that she was, at all times during the grievances complained of, in possession of the certificates of Birtman stock and that, by virtue of Hansel's death, became and was the sole owner, and thereby entitled to have the stock transferred and assigned and new certificates issued to her. Additional allegations were that on September 23, 1955, the day transfer or reissuance of the stock was formally demanded, the cash market value of the stock was $24.50 per share and on February 20, 1956, the date of issuance of the shares in the name of Helen Holmes, alone, $16.50, the total cash market values on the days named being $66,076.50 and $44,500.50, respectively.

By its answer, Birtman averred that the complaint in the Lenox case seriously questioned plaintiff's rights, if any, to the 2,697 shares of Birtman stock standing in the names of the joint tenants on its stock books, and prayed that the existence and extent of such rights be determined and declared; that at no time during the progress of the proceedings in Lenox v. Holmes did plaintiff or any one else make any attempt to cause an order to be entered directing and permitting the issuance, during the pendency of the hearings on the temporary injunction, of certificates representing the shares of stock in controversy in the name of Helen Holmes and the transfer of all or any part of

the shares to a purchaser, if such could be found. Accordingly, Birtman alleged that the bank properly delayed the issuance of new stock certificates until the order and decree in No. 55 S 13710 had become final.

In the affidavit supporting plaintiff's motion for summary judgment, her attorney alleged that no injunction was issued in No. 55 S 13710 or in any other proceeding restraining Helen Holmes, Birtman, or the bank, from selling, transferring or assigning any or all of the shares of stock.

The affidavit of an attorney for the bank in support of defendants' motion for summary judgment averred that the complaint in the Lenox case charged that plaintiff and her husband had, by fraud, false representation and undue influence, schemed to cause Hansel, at a time when he was mentally incompetent, to transfer the shares into the names of himself and Mrs. Holmes as joint tenants, with right of survivorship.

Following the entry of the judgment order finding the issue of liability in favor of plaintiff and against defendants, considerable evidence was heard upon the single question of the amount of damages sustained by plaintiff. Judgment was rendered assessing plaintiff's damages at $6,890.83, together with interest. Thereupon, defendants made a motion to amend the judgment order to delete all reference to interest, alleging that, during the period of their alleged wrongful failure to transfer or reissue the stock, plaintiff asserted and they, the defendants, admitted that she was the sole and absolute owner of the stock, and that, therefore, she was entitled to receive any dividends paid on the stock. Defendants alleged, further, that the amount of $1,483.35 received by plaintiff as dividends during the period should be offset against the interest on damages caused by the alleged wrongful conversion. On August 7, 1958, a final judgment order was entered amending the

judgment order previously entered by finding that plaintiff was entitled to damages in the amount of $6,890.83, without interest.

To sustain the judgment of the Appellate Court which relieved them of liability, defendants maintain that their "temporary delay" in making the requested transfer of plaintiff's Birtman shares of stock from her, as surviving joint tenant, to her, individually, was justified and required because of the fact that the bank, as Birtman's transfer agent, was served as a defendant in Lenox v. Holmes, which it would have had to prejudge, at its peril, to comply with the demand. Defendants also maintain that their delay was reasonable and justified since the "transfer" sought was, in reality, only a reissuance and that the delay in the requested reissuance did not, and could not, result in loss to plaintiff. To obtain a reversal, plaintiff contends that the defendants' refusal to transfer the stock in her individual name when requested so to do was not temporary, reasonable, or justified by the facts, and that their refusal was tantamount to their taking the law into their own hands, thereby enjoining her from transferring or selling the stock without the benefit of a judicial decree or determination. Furthermore, plaintiff contends that it is incongruous to assume that while defendants refused to transfer the stock to her, individually, they would have honored such a request to transfer the shares to a third person or to a *bona fide* purchaser, and that, therefore, she was not required to perform an additional or unnecessary act.

Where, as here, a daughter and her father hold stock as joint tenants with a right of survivorship, upon the father's death the daughter will be treated as a transferee of the stock and, hence, entitled to have the stock transferred to her individual name upon the corporate records. If a corporation wrongfully refuses to recognize a valid transfer of stock and permit a transfer on its books, the transferee can treat the wrongful refusal to allow a trans-

fer as a conversion of the shares as of the time of the conversion, namely, the time of demand and refusal. (See: 12 Fletcher, Cyclopedia of Corporations, sec. 5523, pp. 567, 568, 570, 575, 577.) The important words in the foregoing rule are "wrongfully refused," (See: 12 Fletcher, Cyclopedia of Corporations, sec. 5526, pp. 585, 592,) for conduct by the corporation or its transfer agent that might be considered as a wrongful refusal in one situation will not be so considered in another given fact situation.

In Christy and McLean, The Transfer of Stock, 2d ed., sec. 238, p. 396, the authors make the following statement: "Although a transfer agent is not justified in making an absolute refusal to transfer stock against which a 'stop' has been placed, it may make a qualified refusal. Generally speaking, the officers of a corporation may rightfully refuse, for the time being, a requested registry of stock when notified to do so by a third person, who claims some interest in the stock, which might be lost or injuriously affected by the transfer * * *; and in the presence of such conflicting claims, it is the privilege and the duty of the corporation or its officers, if there be a reasonable doubt as to the respective rights of the contending claimants, to refuse, or rather, delay, registry to either party until the lapse of a reasonable time, within which the merits of the controversy may be determined by an independent investigation by the corporation, or, if necessary, by the institution of appropriate proceedings in the courts. The law, however, does not require or permit the officers of a corporation to assume the functions of a court of justice, and by their decision forever conclude the rights of the contending claimants." See also, 12 Fletcher, Cyclopedia of Corporations, sec. 5528, pp. 592-3; Christy, The Transfer of Stock, 3d ed., sec. 238; *Gorham* v. *Massillon Iron and Steel Co.* 209 Ill. App. 606, affirmed on other grounds, 284 Ill. 594; *People ex rel. Staver* v. *Elgin Motor Car Corp.* 209 Ill. App. 601.

In *Mundt* v. *Commercial National Bank of Ogden,* 35 Utah 90, 99 Pac. 454, 456, the court said: "The corporation should at all times guard its own interests, as well as those of its stockholders in making transfers, and it must exercise ordinary care in doing so. It is liable for negligence in making transfers; and hence it may always refuse to make a transfer when it has reasonable grounds for so doing, but it must act in good faith, and present some adequate reason for refusing to make a transfer, and support it by some evidence."

From the foregoing discussion it is apparent that the key words are "qualified refusal," "conflicting claims," "reasonable doubt," "delay registry," and "reasonable time." Thus, a corporation confronted by conflicting claims as to its stock may make a qualified refusal to transfer or register the shares, where there is a reasonable doubt as to the merits of the adverse claims, and the delay in transferring or registering the stock is for such temporary or reasonable time as to resolve the conflict. However, the law does not require or permit the officers or agents of a corporation to arrogate to themselves the functions of a court, and, by their decision, forever conclude the rights of the contending claimants.

Here, the Appellate Court was of the opinion that the defendants' delay in transferring the stock in accordance with plaintiff's demand was reasonable and justifiable in view of the pending litigation against the bank, as transfer agent of Birtman, seeking to enjoin the transfer of this stock and to have a trust declared with respect to it. Furthermore, the Appellate Court was of the opinion that defendants were not obligated to act at their peril by prejudging the issues presented in the Lenox case, and that the bank maintained the *status quo,* leaving the resolution of these issues for the court to decide. We do not agree.

A reasonable construction of Mrs. Lenox's complaint is that she claimed a one-half interest in the stock, based

upon allegations that when the stock was transferred to plaintiff by her father he was either mentally incompetent or acting under coercion, fraud or undue influence. For all practical purposes, defendants decided these matters in favor of Mrs. Lenox in the first instance. Whether Helen Holmes owned the 2,697 shares unfettered by any claim of her sister or held the stock in trust for her sister and herself as sole heirs-at-law of their father should have been a matter of indifference to the bank, as Birtman's transfer agent. The actual dispute was solely between the two sisters. Mrs. Lenox's claim to an interest in the stock was predicated upon the allegations made in her complaint. Accordingly, the bank owed no greater duty to her than to any other claimant unless her claim was based upon an actual and *bona fide* interest in the stock. For the bank to have been warranted in even tentatively refusing to transfer the shares on its books to plaintiff, its doubt as to her right to registration as sole owner because of an alleged interest of a third person in the stock must have been reasonable. (*Gorham* v. *Massillon Iron and Steel Co.* 209 Ill. App. 606; *People* v. *Elgin Motor Car Corp.* 209 Ill. App. 601.) Otherwise, its legal duty was to transfer the stock to plaintiff in obedience to her request, unless and until enjoined by judicial command.

The defendants contend that reissue was only delayed pending the developments in the Lenox case. Stated somewhat differently, defendants contend that the refusal to reissue the stock was merely temporary. The letter of October 6, 1955, from the bank to plaintiff's attorney stated that the bank would be unable to comply with the request to transfer the stock to the name of plaintiff "until the litigation is disposed of." Defendants now insist that since the Lenox case was disposed of with reasonable dispatch, whereupon the bank registered the stock in plaintiff's name, that the delay in reissuing the stock was indeed only temporary. Had the action proceeded more slowly

the delay in registry would undoubtedly have been equally long, possibly five years instead of five months. When plaintiff made her demand to have the stock transferred to her individually, the stock was then at an all time high price in the over-the-counter market, and the stock had already depreciated in market value when the Lenox case was disposed of within a relatively short period of time. Had the litigation consumed the amount of time many law suits take, the stock might very well have become worthless. The bank, by its arbitrary stand not to transfer the stock to plaintiff until the litigation was disposed of assumed the function of a court, and, by its decision, attempted to conclude the rights of the parties. Only in retrospect can the delay in transfer be considered temporary. Defendants are attempting by hindsight to justify their refusal to register the stock in plaintiff's individual name as a refusal of a temporary nature. The facts simply do not support the contention made. Plaintiff sustained damage for the reason that she could not sell her stock, defendants' action having rendered her shares unmerchantable.

Defendants contend, and the Appellate Court agreed, that since the Lenox complaint alleged that the disputed stock was held in trust for the heirs-at-law of Charles Hansel, and because the complaint further prayed that the bank be temporarily enjoined from transferring the stock, it was the duty of the bank, in the light of these conflicting claims to the stock, to maintain the *status quo* and refuse to transfer the stock to plaintiff individually during the pendency of the Lenox case. With respect to conflicting claims, the law requires that, in order to justify a qualified refusal to transfer or register stock, there must be a reasonable doubt as to the merits of the conflicting claims. We are of the opinion that there was no reasonable doubt with respect to the conflicting claims upon the factual situation before us. For nearly two years prior to the Lenox litigation, the stock in question had stood in the names of

plaintiff and her father as joint tenants. More than five months after the death of the father, plaintiff's sister, for the first time, claimed that plaintiff held the stock in trust for the heirs-at-law of Charles Hansel, his two daughters. There is no contention that the bank attempted to determine the validity of Mrs. Lenox's claim. Yet, upon the mere allegations of Marion Lenox, it refused to transfer the stock to plaintiff as surviving joint tenant. The bank took this position despite the presumption that a person who holds stock duly endorsed is its rightful owner.

The present case is distinguishable from the case in which a party, by actual or constructive notice, is justified in entertaining a reasonable doubt as to the merits of conflicting claims. In *Soltz* v. *Exhibitors Service Co.* 334 Pa. 211, 5 A.2d 899, one Sitnek presented certificates to the corporation and requested that new ones be issued to him. The company refused upon the ground that the certificates were not duly assigned to Sitnek. The corporation contended that the assignments appearing on the certificates had been altered; that such assignments had been made to Sarah Silverman (deceased at the time of the suit); that her name as assignee had been partially obliterated thereon, and the name of Sitnek substituted without her knowledge and consent. The court stated that the erased assignments placed the corporation upon notice that the stock had been transferred to Sarah Silverman prior to the purported assignments to Sitnek. The corporation, therefore, had to decide whether the certificates showed probable ownership in someone other than Sitnek. In this situation, the corporation was entitled to protection, and could properly insist that the transferor be brought in to acknowledge the signature. If the personal representative of Sarah Silverman appeared and released the corporation, then the corporation would have been given adequate protection.

In *Daily* v. *Universal Oil Products*, 76 F. Supp. 349,

the inventor of a process to distill petroleum was also the president and principal shareholder of the Sunset Oil Refining Company. The inventor, by an agreement with minority shareholders, in return for capital they supplied the corporation, promised to place his patents in trust for the company. Subsequently, the inventor sold interests in the patents to Universal Oil Products in exchange for stock in that corporation. The minority shareholders of Sunset, the equitable owners of the patents, sought to enforce their rights under the agreement entered into between the inventor and Universal Oil Products. It was contended that Universal Oil Products did not have any knowledge that there were equitable owners of the patents when they were purchased from their inventor. The court answered (p. 362) : "During the conversation which took place before the patents were purchased, a routine inquiry into the books * * * would have shown that the inventions then the subject of the discussions were carried on the company's books as an asset of the value of $100,000. * * * The evidence also shows that [certain officers of the corporation] had every opportunity to learn of the equitable rights and interests of Sunset Oil Refining Company in the patents and patent applications from the file of Patent No. 1,123,502 in the Patent Office." The court also stated that, with respect to patents, it was common knowledge that legal title to a patent could be in one person and the equitable right to it in another.

Under the facts of the instant case, the defendants relied upon mere allegations, unsupported by proof. These allegations were insufficient to support a reasonable doubt as to the merits of the conflicting claims. The bank, by its written refusal to reissue the stock to plaintiff individually, a refusal which could have remained in effect a great length of time, assumed the role of a court in litigating the parties' rights. The bank's actions were analogous to those of a volunteer, and the law does not protect volunteers.

The present case is also distinguishable from *Bartnett* v. *Handy*, 243 Mass. 446, 142 N.E. 84. In the latter, the plaintiff held a certificate for stock under an assignment from Bartnett and demanded that the corporation enter the transfer and issue plaintiff a new certificate in his own name, which the corporation refused to do upon the ground that there had been an overissue of its stock, and, also, that at the time of such refusal and thereafter, there was in effect an injunction obtained in another action restraining the corporation from transferring any stock which stood in the name of Bartnett. The court held that the injunction was a sufficient defense to the plaintiff's action against the corporation because of the refusal to make the transfer. Here, we do not have a court injunction, but a complaint seeking an injunction to prohibit the transfer of the stock to the plaintiff individually. However, the bank, by its actions, treated the complaint seeking an injunction as if the court had issued an order granting the injunction.

The fact that plaintiff received and cashed two dividend checks after her father's death shows that the bank and Birtman did not consider that the *status quo* would be disturbed by such payments while the Lenox action was pending. These payments are indicative of the fact that plaintiff was regarded as the true owner of the stock during the same period that the issuance of the stock to her individually was denied by defendants. Defendants' actions were inconsistent. While declining to cause the desired transfer of the stock, they nevertheless recognized plaintiff's ownership of all of the stock throughout the pendency of the Lenox case by paying her dividends on the stock while the litigation between the sisters remained unresolved. In so doing, defendants necessarily disregarded the claim of Mrs. Lenox that she had some interest in the stock.

Defendants assert that if the Lenox case had not been pending, it would have been proper for the bank to interplead the adverse claimants for a judicial determination of

their rights. (See: *Dickinson* v. *Griggsville National Bank,* 209 Ill. 350.) In *Miller* v. *Doran,* 151 Ill. App. 527, the court said (p. 538): "After one claimant had commenced suit against the other and the stake holder, a bill of interpleader would probably be improper; but by motion or petition in the suit, the same results could have been obtained." Had defendants really desired to protect themselves they should have petitioned the court in the Lenox case as to their proper action upon plaintiff's request for a reissuance of the stock to her individually. This procedure was not followed, the defendants electing instead to pursue their own course of action and thereby assuming the risks of an inappropriate move.

Defendants also contend that plaintiff did not make a request to transfer the stock to a third person or to a *bona fide* purchaser of the stock, and that if such a request had been made, it would have been complied with. We are unable to accept defendants' reasoning in this regard. Defendants contend that their refusal to transfer the stock was to avoid any possible liability to Mrs. Lenox in the event her action should terminate in her favor. If the bank had consented to a transfer of the shares to an innocent purchaser for value, then all hope for recovery by Marion Lenox would have been lost.

The contention is made that since the plaintiff merely wanted a reissuance of the stock to her individually, and made no indication that she wished to sell, she suffered no damage. The stock certificates standing on the books of Birtman in the names of Helen Holmes and her father, the decedent, were not merchantable, and no valid sale or transfer thereof could be made until reissued to plaintiff, as the surviving joint tenant. Defendants' own witness so testified. Since the bank's letter was perfectly clear as to the fact that it would not reissue the stock to plaintiff in her own name during the pendency of the Lenox case, it would have been an unnecessary and useless act for plain-

tiff to have made a demand upon the bank for transfer to a third person or to a *bona fide* purchaser of the stock. This is particularly so where, as here, defendants maintained that they felt obligated to resist plaintiff's demand in view of the Lenox case. The complaint in that action prayed that the bank and others be temporarily enjoined from transferring, assigning, selling, encumbering or dissipating the stock or the proceeds therefrom. These all-inclusive demands were sufficiently pervasive to include transfer of the stock to a third person or sale to a *bona fide* purchaser. Performance of a useless act was not required. *Leitch* v. *Sanitary District of Chicago,* 386 Ill. 433; *Daven* v. *Downey,* 378 Ill. 543.

The judgment of the Appellate Court upon the issue of defendants' liability to plaintiff is reversed and the judgment of the circuit court of Cook County in such respect is affirmed. However, the cause must be remanded to the Appellate Court to consider and pass upon the issues relating to damages raised by both the appeal and cross appeal. *Robinson* v. *Workman,* 9 Ill.2d 420; *Christopher* v. *West,* 409 Ill. 131.

*Appellate Court reversed, circuit court affirmed in part, and cause remanded to Appellate Court, with directions.*

Mr. CHIEF JUSTICE HOUSE, specially concurring:

I can accept the conclusion of the majority, but not the reasoning leading up to such conclusion. The officers and transfer agents of the corporation are told that they cannot arrogate to themselves the functions of a court by refusing to register the transfer, but in the next breath they are held responsible for failure to adjudicate the adverse claim as invalid.

A corporation, or its transfer agent, is justified in temporarily delaying a transfer when notified to do so by a third party claimant and making an investigation of the claim. If not then satisfied of the safety in making the transfer immediately, it should notify the owner seeking

the transfer of its grounds for refusal. It should further state the requirements to be met for its protection as a prerequisite to recording the transfer. Where reasonable grounds for refusal exist, a bond indemnifying and saving it harmless from loss could be demanded. The person seeking the transfer could not then complain if he failed to give a bond.

Applying the foregoing to this case, I am of the opinion that the defendants had reasonable grounds for temporarily delaying transfer in order to investigate the claim, but they should have given the plaintiff a means of preventing loss rather than arbitrarily refusing to do anything until a suit, found to be frivolous and without foundation, became final.

Mr. JUSTICE DAVIS, dissenting:

Upon the facts of this case, I dissent from the opinion of the court which recognizes that the defendants could delay the transfer of the stock if such action was based upon a reasonable doubt as to the merits of the conflicting claims concerning its ownership. It appears to me that no doubt could be more reasonable than that based on the allegations of a verified complaint filed in a court of record.

The court however held that "these allegations were insufficient to support a reasonable doubt as to the merits of the conflicting claims." If this were true, the present plaintiff Holmes, who was a defendant in the Lenox suit, could have achieved prompt relief by a motion to dismiss or for summary judgment in the original cause of Lenox v. Holmes. However, the attorneys for Holmes deemed this verified complaint sufficient to require an answer, and the trial judge who considered the issues raised by the pleadings, referred the question of the issuance of the injunction to a master in chancery to hear evidence and to report thereon. From the record, it appears that the superior court of Cook County in Lenox v. Holmes found a lack of merit

in the Lenox action only after this report was filed and hearing was held thereon.

As I read the opinion in this case, the court has not only imposed a duty upon a corporation and its transfer agent to undertake an independent inquiry to determine the merits of conflicting claims presently pending before a court of record, but the court has also required that such determination must be immediately and correctly made at the peril of the corporation and its transfer agent.

It is inconsistent for the court to state that the law does not "permit the officers or agents of a corporation to arrogate to themselves the functions of a court" and yet hold that the defendants are liable for failing to determine the validity of the Lenox claim more promptly than the superior court. Justice will be ill served by the rule here established —that a corporation and its transfer agent, at its peril, must prejudge the merits of pending litigation.

Neither do I agree with the conclusion of my brother House that the defendants had a duty to suggest a manner by which the stock could be transferred. While such procedure may be proper in the light of good public relations, the law does not require it.

It was the obligation of Mrs. Holmes to determine the course she should follow. She could have sought an order of court permitting the transfer of the stock, a summary disposition of the complaint in Lenox v. Holmes, or she could have tendered a sufficient indemnity bond to the corporation. The choice of such procedures was a decision for her to make. I find nothing in this record to reasonably suggest that the defendants would have refused a transfer if she had pursued any of these methods. The refusal to transfer clearly indicated the cause for the delay and it was her duty to eliminate it.

Mr. JUSTICE SCHAEFER joins in this dissent.