Bernard S. KANTON, Plaintiff,

v.

UNITED STATES PLASTICS, INC., a Florida corporation, and Registrar & Transfer Company, a New Jersey corporation, Defendants.

Civ. No. 309–65.

United States District Court
D. New Jersey.

June 1, 1965.

Crummy, Gibbons & O'Neill, by John J. Gibbons and Matthew P. Boylan, Newark, N. J., for plaintiff.

Wilentz, Goldman & Spitzer, by Robert N. Wilentz, Perth Amboy, N. J., for defendant United States Plastics, Inc.

Lebson & Prigoff, by Milton Prigoff, Englewood, N. J., for defendant Register & Transfer Co.

AUGELLI, District Judge:

In this action plaintiff Bernard S. Kanton, claiming to be the owner and holder of 10,920 shares of Class A stock of defendant United States Plastics, Inc. (Plastics), moves by way of summary judgment for a mandatory injunction to compel Plastics and its transfer agent, defendant Registrar & Transfer Company (Registrar), to effect a transfer of said stock.

Kanton is a New York resident, Plastics a Florida corporation, and Registrar a New Jersey corporation.

Jurisdiction is invoked on the basis of diversity of citizenship and allegation of the requisite amount in controversy. Additionally plaintiff alleges the action involves a question arising under the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., and also that jurisdiction may be founded on section 27 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78aa.

In opposition to plaintiff's motion, defendants move to dismiss the action for a number of reasons, including lack of jurisdiction and improper venue. For a better understanding of the several issues involved in the case, a recital of the relevant facts disclosed by the moving papers seems appropriate at this point.

Plaintiff's verified complaint in this case was filed on March 24, 1965. It appears therefrom and from the exhibits annexed thereto, that in February 1962, plaintiff purchased from Edward R. Scharps, president of Plastics, from Scharps' personal holdings, 10,000 shares of Plastics Class B convertible stock for $27,500.00. The purchase was made for investment purposes and a legend to that effect appeared on the face of the certificate.

In January 1963, plaintiff converted his Class B stock into the Class A stock on a share for share basis. The Class A certificate was stamped with the same investment representation as had been on the Class B certificate. A 4% stock dividend declared in 1962 and a 5% stock dividend declared in 1964, increased

plaintiff's holdings by 920 shares. The certificate representing the 1964 stock dividend (520 shares) did not have endorsed thereon any restrictive legend. Registration statements filed by Plastics with the Securities and Exchange Commission did not reflect plaintiff's stock purchase from Scharps.

In February 1962, plaintiff was employed by Plastics as its special counsel. This relationship continued until November 1964, at which time it was terminated because of certain differences that had arisen between plaintiff and Scharps. Following this change in status, plaintiff determined to dispose of his Plastics stock, and under date of January 26, 1965, he obtained an opinion of counsel, concurred in by a "no action" letter of the Securities and Exchange Commission dated March 8, 1965, that plaintiff was free to dispose of his Plastics stock either publicly or privately without registration under the Securities Act of 1933.

On March 10, 1965, counsel for plaintiff forwarded to Registrar, properly endorsed for transfer, certificate JU1763 for 10,400 shares, and certificate JU3252 for 522 shares of Plastics stock, with a covering letter requesting that 10,900 of said shares be issued in the name of Torsal Company, a nominee of plaintiff, and 22 shares in the name of plaintiff. Also enclosed with the certificates was the opinion letter of plaintiff's counsel dated January 26, 1965 and the "no action" letter of the Securities and Exchange Commission dated March 8, 1965. A prompt transfer of the stock was requested.

On March 18, 1965, counsel for plaintiff sent a telegram to Registrar complaining about the delay in effecting the transfer, and threatening to hold Registrar responsible for any damages resulting from its failure to transfer promptly. On the following day, March 19, Registrar sent a telegram to plaintiff's counsel stating that it had wired its principal, Plastics, and that a prompt reply was anticipated. On March 24, 1965, Registrar returned plaintiff's stock certificates to plaintiff's lawyer, with a letter stating that it was doing so because as transfer agent it was not permitted to make the requested transfer due to instructions received from Plastics.

Because of the refusal to register a transfer of his stock, plaintiff charges both defendants with an unlawful conversion of same, and in this connection alleges that on March 19, 1965, Class A common stock of Plastics was selling for approximately $30.00 a share. Plaintiff claims he has no adequate remedy at law to perfect legal title to the shares in question in his nominee, and asks this Court for an injunctive order directing defendants to transfer the shares of Plastics stock as requested by plaintiff, or, in the alternative, for a judgment against the defendants for $327,000.00, the alleged value of the shares as of March 19, 1965.

Registrar filed a verified answer, with exhibits annexed, which discloses that the services of Registrar, as transfer agent for Plastics, was terminated as of the close of business on March 30, 1965, after the filing of plaintiff's complaint in this Court, and that the transfer agent now acting for Plastics is the First National Bank of Miami. Since it no longer is the transfer agent for Plastics, Registrar says the relief sought against it by way of injunction has become moot and should, therefore, be denied.

Registrar also claims it was justified in refusing to register the transfer because it had notice of an adverse claim with respect to the stock, and that by reason thereof it was under a duty to make inquiry concerning the matter under applicable provisions of the Uniform Commercial Code, N.J.S.A. 12A:8–101 et seq. Registrar alleges it was conducting such inquiry when this action was commenced less than two weeks after it received the stock for transfer from plaintiff on March 10, 1965. Registrar contends that under the Code it had thirty days within which to complete its inquiry or to obtain an indemnity bond, but that before the expiration of such period its

authority to act as transfer agent for Plastics had terminated.

Another asserted justification for its action urged by Registrar is that the stock submitted to it for transfer had not been registered under the Securities Act of 1933, and that this raised a question as to whether a transfer could be made on the basis of the "no action" letter furnished by plaintiff. In this connection Registrar points to a letter of the Securities and Exchange Commission dated April 12, 1965, obtained by Scharps' New York lawyer, in which it is stated that the opinion given in a "no action" letter "is not binding in a court of law on the question of the liability of an issuer for permitting a sale of its securities without registration under the Securities Act of 1933, nor would such an opinion preclude an issuer from maintaining that a sale of its unregistered securities by a stockholder would be in violation of Section 5 of the Securities Act of 1933."

A further contention made by Registrar is that the matter in controversy does not exceed the sum of $10,000.00 and that, therefore, this Court does not have jurisdiction over the subject matter of the action.

Finally, Registrar contends that venue has been improperly laid in this District because it was not the general agent of Plastics, nor was Plastics doing business in New Jersey, and that under such circumstances the most convenient forum to dispose of the action would be the United States District Court in Florida, where both Plastics and its new transfer agent are located. Registrar also calls this Court's attention to the fact that an action has been commenced in the federal court in Florida involving the same issues encompassed by this action, and suggests that this action should be transferred to that court, where all of the issues can be tried and final disposition made of the case.

A word about the Florida litigation. It appears that on March 24, 1965, the same day the action in this Court was commenced, a complaint was filed by Scharps in the United States District Court for the Southern District of Florida, Miami Division, against his corporation, Plastics, and Kanton, plaintiff in this case. In that action, Scharps sought to rescind the sale of Plastics stock he had made to Kanton on the ground that such sale was induced by certain false and fraudulent representations made by Kanton to Scharps in connection with that transaction.

All parties in Florida moved for partial summary judgments. All were denied. Scharps wanted the court to direct Plastics to make no change in the record ownership of the Plastics stock standing in the name of Kanton; Plastics asked for an order that would authorize and direct it to keep the record ownership of said shares in Kanton's name; and Kanton, by his motion, sought a determination that Scharps was not entitled to the equitable relief requested in his complaint. This Court is now informed that the Florida action has been dismissed.

Putting aside for the time being the Florida litigation, and the alternative motions of defendants in this Court to either stay the action in this District, or to transfer the action to the federal court in Florida, consideration will first be given to the issues relating to the jurisdiction of this Court, objections to venue, failure to join an indispensable party, and the right of plaintiff to a summary judgment.

 As to Registrar, there can be no question of venue or service of process. It contends, however, that jurisdiction is lacking because the amount in controversy does not meet the requirements of 28 U.S.C.A. § 1332. This is based on Registrar's allegation in its verified answer that between the date plaintiff's stock was submitted to it for transfer on March 10, 1965, and the date its appointment as transfer agent for Plastics was terminated on March 30, 1965, the stock increased in value. Hence, argues Registrar, plaintiff sustained no damage, and since plaintiff sustained no damage, there can be no

amount in controversy. There is no merit to this contention. Plaintiff's claim is asserted against both Registrar and Plastics, and could well exceed the requisite jurisdictional amount. A dismissal of the complaint as to Registrar, based on nothing more than its allegation, would be improper. Moreover, the position taken by Registrar would require a determination at this time of the relative merits of the dispute between it and plaintiff, something this Court should not do for the purpose of evaluating the amount in controversy for jurisdictional purposes under the diversity statute. See Wade v. Rogala, 270 F.2d 280 (3 Cir. 1959).

■ The notice of adverse claim relied upon by Registrar to justify its refusal to register the requested transfer of plaintiff's stock consists of three letters dated November 2, 1964, January 21, 1965, and March 23, 1965. The first letter was by Scharps as president of Plastics, to Registrar, in which the latter was told that under no circumstances was plaintiff's stock to be transferred without Scharps' approval. The second letter, also from Scharps as president of Plastics to Registrar, reiterated the instructions given in the November 2, 1964 letter and concluded that "under no circumstances [was Registrar] to effectuate any transfer of shares of stock registered in the name of [plaintiff], notwithstanding the fact that a 'no action' letter may be issued with respect thereto by the United States Securities and Exchange Commission." The third letter was written by Scharps' attorney to Registrar, enclosing an affidavit signed by Scharps as president of Plastics, in which prior instructions were repeated that Registrar was not to transfer plaintiff's shares "until directed to do so by the President of Plastics." In not one of these letters does Scharps lay any claim to plaintiff's stock. Nothing contained in said letters would impose upon a transfer agent a duty to make inquiry concerning an adverse claim, but even if it be assumed that a duty to make inquiry did exist, it is clear from the record in this case that no investigation was made by Registrar in connection with any adverse claim asserted by Scharps, and that it refused to register the transfer requested by plaintiff only because it was directed not to do so by Scharps. The reliance of Plastics on the Scharps adverse claim will be treated later in this opinion.

Both Registrar and Plastics refer to a possible violation of the Securities Act of 1933.

■ Registrar's position is that the stock submitted to it for transfer had not been registered under the Securities Act of 1933, and that this raised a question as to whether a transfer could be made on the basis of the "no action" letter furnished by plaintiff. Plastics, while conceding that its defense to this action is based primarily upon the existence of the alleged adverse claim to the stock made by Scharps, says it is also obliged to take reasonable steps to satisfy itself that it is not participating in a criminal act in permitting a transfer of shares of stock not registered under the Securities Act of 1933, and which bear a legend that the shares are subject to an investment representation. This Court is satisfied that the refusal of both Registrar and Plastics to make the requested transfer of plaintiff's stock was based, not on any fear of criminal sanctions under the Securities Act of 1933, but on orders from Scharps that the requested transfer was not to be made.

Neither Plastics nor Registrar point to any provision of the Securities Act of 1933 or the Securities Exchange Act of 1934 that would make them liable to criminal action for registering a transfer of stock. Defendants make reference to section 5 of the 1933 Act, 15 U.S.C.A. § 77e. But that section has nothing to do with stock transfers. It prohibits the sale of securities that are subject to its provisions. It is difficult to envision how the transfer of stock requested by plaintiff in this case would make defendants liable to the penalties prescribed in section 24 of the 1933 Act, 15 U.S.C.A. § 77x, for a willful violation of section 5.

Moreover, there would seem to be a sound basis for treating any sale of plaintiff's stock that might occur, as exempted from the provisions of section 5 of the 1933 Act, by virtue of section 4, 15 U.S. C.A. § 77d, of the same statute.

Plastics filed no answer to plaintiff's complaint but did, however, submit a brief, exhibits and affidavits in opposition to plaintiff's motion for summary judgment, and in support of its own motion to dismiss the action, or stay its prosecution pending disposition of the Florida litigation, or to transfer the case to Florida.

Consideration will now be given to the grounds urged by Plastics for a dismissal of the action, namely, lack of jurisdiction, improper venue, and failure of plaintiff to join an indispensable party.

■ If this Court has jurisdiction in this case, it must be based on diversity of citizenship and amount in controversy. There appears to be no basis in fact to support a claim of federal question jurisdiction, or jurisdiction under the Securities Acts of 1933 and 1934. Essentially, what is involved here is a dispute concerning plaintiff's right to have his stock transferred on the books of Plastics. The rights and liabilities of the parties to this transaction are to be measured by state, rather than federal, law. Plaintiff's claim, realistically viewed, is not related to, and does not arise under, the Securities Acts. See Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Meisel v. North Jersey Trust Co., 218 F.Supp. 274, 278 (S.D.N.Y.1963).

Service of process on Plastics, at first improperly attempted, was eventually made by registered mail as directed in this Court's order of March 24, 1965, and in conformity with Rule 4(d) (7) of the Federal Rules of Civil Procedure, and the New Jersey Rules of Civil Practice, R.R. 4:4–4(d).

Insisting that plaintiff must rely solely upon diversity of citizenship and amount in controversy in order to vest jurisdiction in this Court, Plastics asserts it does not have the required minimal contacts with New Jersey so as to permit an exercise of jurisdiction over its person.

An affidavit filed on Plastics' behalf by its secretary, Charles L. Burkhart, states that Plastics is not doing business in New Jersey, and that it has no offices, solicits no sales, has no telephone listings, and does no advertising in this State. The business of Plastics, according to the affidavit is the manufacture, sale and distribution of laminated plastic sheets and related items, and it is alleged that this business activity is carried on in states other than New Jersey. The affidavit goes on to say that Plastics never contemplated that the appointment of a transfer agent in New Jersey would subject it to service of process in the jurisdiction where such transfer agent conducted its business activities; that Plastics was always of the understanding that it could control ultimate policy decisions which might have to be made in connection with the transfer of its stock; and that Plastics never considered its relationship with Registrar to be that of master and servant, but rather, that it looked upon Registrar as an independent entrepreneur.

Plastics also contends that the mere presence of its transfer agent, Registrar, in New Jersey, does not establish those minimal contacts with the state that would justify the exercise of *in personam* jurisdiction by this Court.

■ This Court does not decide that the mere presence in this state of Registrar, without more, is sufficient to subject Plastics to personal jurisdiction. But it does hold that Plastics did have such contacts with New Jersey in relation to activities giving rise to this lawsuit as to make it amenable to a judgment *in personam*, and that the maintenance of this action in this District does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Hoagland v. Springer, 75 N.J. Super. 560, 183 A.2d 678 (App.Div.1962).

The quality and nature of Plastics' activities in this state may be briefly stated as follows:

Registrar was the transfer agent for Plastics in New Jersey at all relevant times herein. It acted in that capacity for a number of years prior to the termination of its services at the end of March, 1965. The refusal to transfer plaintiff's stock took place in New Jersey. In refusing to make the requested transfer, Registrar acted at the express direction of its principal, Plastics. It is this refusal to register the transfer that gave rise to the action now pending in this Court, and both Registrar and Plastics are charged with wrongful conduct in this regard. There has been contact by Plastics with New Jersey in connection with the subject matter of this action, as is evidenced by the letters of November 2, 1964, January 21, 1965, and March 23, 1965, previously mentioned, and the indemnity agreement given by Plastics to Registrar to hold the latter harmless for any damages it may sustain by reason of its refusal to make the transfer. The cause of action asserted here resulted from the orders given by Plastics to Registrar, which were intended to be carried out in New Jersey, and were in fact executed here.

This Court feels that the foregoing activities are sufficient to subject Plastics to *in personam* jurisdiction. It follows that venue has been properly laid in this District under 28 U.S.C.A. § 1391(c). Nelson v. Victory Electric Works, Inc., 210 F.Supp. 954 (D.C.Md.1962); Jaftex Corporation v. Randolph Mills, Inc., 282 F.2d 508 (2 Cir. 1960).

■ Plastics' argument for a dismissal of the action for failure to join Scharps as an indispensable party is bottomed on Scharps' claim that he is entitled to a recision of the sale of Plastics stock he made to plaintiff. As previously noted, the Florida action in which Scharps sought such relief has been dismissed. Scharps has made no claim in this action to the stock in question. The only thing before this Court that makes any mention of Scharps' claim is the statement in the Burkhart affidavit, previously mentioned, that Plastics has received notice from Scharps that he claimed ownership of the stock, and that Scharps had instituted an action in the federal court in Florida to rescind the transfer of the shares he had made to plaintiff. This vague language is meaningless. No details are given; no facts are stated in support of the alleged claim; all this Court is told, without any specificity, is that Scharps has notified his corporation that he claimed ownership of plaintiff's stock. Equally indefinite and vague are the previously mentioned letters sent by Scharps to Registrar.

This Court is not being called upon, in this action, to decide the dispute arising out of Scharps' alleged adverse claim to the stock. That is a matter between Scharps and plaintiff. The question to be decided here is whether Plastics and Registrar acted properly in refusing to register a transfer of plaintiff's stock because of an adverse claim thereto. All parties necessary for a resolution of this question are before this Court, and Scharps is not an indispensable party to an adjudication of this issue.

The remaining question to be decided is whether, on the present record, plaintiff is entitled to a mandatory injunction, by way of summary judgment, to have his stock transferred on the books of Plastics. It is contended that there are disputed questions of material facts in this case that preclude the granting of a summary judgment. These facts are said to relate to the propriety of Plastics' refusal to permit a transfer of plaintiff's stock because of the assertion of an adverse claim thereto. It becomes necessary, therefore, to examine the law dealing with the right of a corporation to refuse a transfer of stock where conflicting claims to the same stock are made by different persons.

■ Since jurisdiction in this case is based upon diversity of citizenship, the law of the forum applies, as well as the local rule of conflicts of law. Alcaro v.

Jean Jordeau, 138 F.2d 767 (3 Cir. 1943).

■ . Effective January 1, 1963, New Jersey adopted the Uniform Commercial Code, N.J.S.A. 12A:1–101 et seq. Section 12A:8–106, dealing with the rights and duties of an issuer with respect to registration of transfer of securities, provides that such rights and duties "are governed by the law (including conflict of laws rules) of the jurisdiction of organization of the issuer." This Court is required, therefore, to look to the law of Florida, and its conflict of laws rules, to ascertain the rights and duties of a corporation to register a transfer of stock in light of an adverse claim.

■ The Florida cases cited by counsel for the parties, principally Warner v. Florida Bank & Trust Co., 160 F.2d 766 (5 Cir. 1947) and Mixson v. First National Bank, 102 Fla. 468, 136 So. 258 (1931) are not helpful. We are dealing here with the refusal of a Florida corporation to register a transfer of stock made by plaintiff to his nominee, not because of any irregularity concerning that particular transfer, but because of an alleged adverse claim made to that stock by Scharps. Under these circumstances, the "law of the place where the paper is", Direction der Disconto-Gesellschaft v. United States Steel Corp., 267 U.S. 22, 45 S.Ct. 207, 69 L.Ed. 495 (1925) and Warner v. Florida Bank & Trust Co., supra, has no application.

■ Florida has not enacted the Uniform Commercial Code. It did adopt the Uniform Stock Transfer Act in 1943. However, as pointed out in 12 Fletcher, Cyclopedia Corporations, 1957 Revised Volume, § 5518, at page 542, the Uniform Stock Transfer Act, unlike the Uniform Commercial Code, does not cover the problems arising out of conflicting claims to stock and the rights and duties of an issuer or transfer agent with respect thereto. The case law of Florida is singularly silent on this point.

■ Since, in this diversity case, research has not brought to light any controlling Florida authorities on the question here involved, this Court, upon a consideration of such other legal authorities as are deemed pertinent, is obliged to prophesy, on the basis of such authorities, how the Florida courts would decide the issue here if called upon to do so. See Slattery v. Marra Bros., 186 F.2d 134, 139 (2 Cir. 1951). It is this Court's considered judgment, for reasons hereinafter stated, that Florida would grant plaintiff the relief he seeks here.

A respectable body of law that is indicative of the rights and duties of a corporation with respect to registration of transfers of its stock is, of course, the previously mentioned Uniform Commercial Code, which is presently effective in 24 states, and soon to become effective in at least 3 others.

Under the Code, and so far as is pertinent to the facts of this case, an issuer to whom a security is presented for registration is under a duty to register the transfer as requested in the absence of any adverse claim. If there is an adverse claim, the issuer is under a duty to make inquiry concerning such claim if written notification thereof is received at a time and in a manner which affords the issuer an opportunity to act on it prior to the issuance of a new certificate. This duty of inquiry may be discharged by the issuer by any reasonable means, including notification by mail to the adverse claimant that the security has been presented for registration, and that the transfer will be registered, unless within thirty days from the date of mailing the notification, either an appropriate restraining order issues from a court of competent jurisdiction or an indemnity bond is filed with the issuer sufficient in amount to protect the issuer from any loss or damage it may sustain by reason of compliance with the adverse claim. After this duty of inquiry is discharged, it then becomes mandatory under the Code, N.J.S.A. 12A:8–401, for the issuer to register the transfer.

Plastics, also assuming as did Registrar, that the Uniform Commercial Code, N.J.S.A. 12A:8–101 et seq. was applicable to the transfer sought to be effected

by this action, points out that the duty of an issuer or transfer agent to register a transfer of stock becomes mandatory under the Code only if all the conditions of section 12A:8–401 are satisfied, one of which relates to the issuer's duty to inquire into adverse claims. Plastics argues that until such duty of inquiry has been satisfied, the duty to register the transfer would not arise; that in the instant case, Plastics had been notified by Scharps that he had an adverse claim, based on fraud, to plaintiff's assertion of ownership of the stock; and that he, Scharps, was pursuing that adverse claim in court. Under such circumstances, says Plastics, it would not only be dangerous and unwise for the issuer or transfer agent to disregard the claim of adverse ownership and transfer the stock, but that such action is not required by the Code.

Plastics claims that it and Registrar "have chosen the simplest, most logical and fairest way" to discharge their duty of inquiry concerning Scharps' claim, by deciding to have the federal court in Florida pass upon the question of rightful ownership of the stock, and that until such issue is resolved, the mandatory duty to transfer imposed by the Code should be suspended.

Even if it be assumed that Plastics was justified in its view that the mandatory duty to register a transfer of securities imposed by the Code should be suspended pending determination of the question of rightful ownership of the stock by the federal court in Florida, compliance with such mandatory duty should no longer be suspended because the Florida litigation has been terminated in the manner already indicated.

■ Plastics took absolutely no steps under the Code to relieve itself of the mandatory duty to register the transfer of plaintiff's stock. If it can be said that Plastics was under a duty to inquire into the Scharps claim before permitting the transfer of plaintiff's stock to be registered, an assumption not at all warranted by the facts in this case, it could have discharged such duty of inquiry by notifying Scharps that the transfer would be registered unless within the thirty-day period allowed by the Code, Scharps obtained a restraining order or put up an indemnity bond. Plastics did nothing in this regard. Instead, it was content to be made a party defendant in the Florida litigation, and to join with Scharps in that action in an effort, which proved unsuccessful, to prevent any change in the record ownership of plaintiff's stock. Aside from other considerations, mention of which will be made later in this opinion, it is clear that if the Uniform Commercial Code is deemed to be applicable to the facts of this case, Plastics is under a duty to register the transfer of plaintiff's stock.

The Code provisions relating to the mandatory duty of an issuer to register a transfer of stock, liability for failure to do so, the right and duty to make inquiry in the face of an adverse claim, all find support in the case law of the several states. See 18 Am.Jur.2d, Corporations, §§ 416, 417, 419, and the cases cited in support of the text; also, 12 Fletcher, Cyclopedia Corporations, 1957 Revised Volume, §§ 5518, 5527, 5528 and 5528.1.

■ The general rule is that a corporation may refuse to register a transfer of stock when it has reasonable grounds for doing so, but it must act in good faith and present some adequate reason for its refusal, and support such refusal by evidence. 12 Fletcher, Cyclopedia Corporations, 1957 Revised Volume, § 5527, at page 587; 18 Am.Jur.2d, Corporations, § 416. Notice of an adverse claim to the stock sought to be transferred is a reasonable ground for temporarily refusing to register the transfer. O'Neil v. Wolcott Mining Co., 174 F. 527, 27 L.R.A.,N.S., 200 (8 Cir. 1909); Holmes v. Birtman Electric Co., 18 Ill.2d 554, 165 N.E.2d 261, 75 A.L.R. 2d 735 (1960).

■ Viewing this case in light of the foregoing common law principles, it cannot be doubted that a corporation may refuse, for some reasonable period of

time, to register a transfer of stock when an adverse claim thereto is made.

The position of Plastics in this matter is set forth in the Burkhart affidavit mentioned earlier in this opinion, wherein it is stated that Plastics received notice from Scharps that he claimed ownership of the stock registered in plaintiff's name, and that Scharps had instituted an action in the federal court in Florida for a rescision of the transfer of the shares he had made to plaintiff. The affidavit then concludes with the statement that Plastics, not being able to make a determination with respect to the conflicting claims to the stock, refused to allow a transfer to be made of the certificates in question.

This statement of position by Plastics, on its face, presupposes an adverse claimant dealing at arms length with the corporation of which he is a stockholder. But this Court cannot shut its eyes to the relationship existing between the adverse claimant and his corporation, and the latter's conduct by reason thereof. That Scharps dominated and controlled the actions of Plastics in this case is clear. The corporate entity, Plastics, is, in reality, being used by its president, Scharps, to defeat a transfer of stock in which the corporation has no interest. It was Scharps who ordered Registrar not to register any transfer of plaintiff's stock without the express approval of Scharps. It was Scharps who caused Plastics to give Registrar a corporate indemnity agreement to hold Registrar harmless for any damage it might sustain by reason of its refusal to register a transfer of plaintiff's stock, in which stock the corporate indemnitor had no interest. It was Scharps who instituted the action in Florida, which has since been dismissed. Under the circumstances here existing, Plastics is chargeable with full knowledge of the Scharps claim from its very inception. It has done absolutely nothing with respect to that claim, except to join with Scharps in the Florida action in the unsuccessful attempt to keep the record ownership of plaintiff's shares in plaintiff's name.

There are no disputed issues of material facts in this case that would preclude the granting of a summary judgment. No adequate reason has been presented to this Court in justification of Plastics' refusal to permit a transfer of plaintiff's stock. If it is argued that the Scharps lawsuit in Florida justified a refusal to transfer, that litigation is no longer pending. Other than this lawsuit, the record is barren of any effort made by Plastics to inquire into the adverse claim asserted by Scharps and to take any action with respect thereto vis-à-vis plaintiff's request to have his stock transfer registered on the books of Plastics. A refusal to register a transfer of stock must be based on something more substantial than the mere assertion of an adverse claim, and that "something" is lacking here. O'Neil v. Wolcott Mining Co., 174 F. 527, 533, 27 L.R.A.,N.S., 200 (8 Cir. 1909); Holmes v. Birtman Electric Co., 18 Ill.2d 554, 165 N.E.2d 261, 268, 75 A.L.R.2d 735 (1960).

It is to be noted at this point that counsel for Plastics has informed this Court that in connection with the dismissal of the Scharps action in Florida, leave was given to Scharps to file an amended complaint within twenty days from the order of dismissal, which is dated May 18, 1965. The Court is also informed that it is Scharps' intention to file an amended complaint. Be that as it may, the issue before this Court, as previously pointed out, is limited to a determination of plaintiff's right to have a transfer of his stock registered on the books of Plastics. Whether or not Scharps can establish his claim to that stock as against plaintiff in some other proceeding is another matter, with which this Court is not presently concerned.

If at any time it could be said that there was justification for Plastics' refusal to register a transfer on its books of plaintiff's stock, that time has long since passed. There are no legal restraints against Plastics that would prevent it from making the requested transfer. No adequate reason has been shown why such transfer should not be made.

This Court will, therefore, direct Plastics to register a transfer of plaintiff's stock to himself and to his nominee, free of any restrictions, and in accordance with the letter of Milton V. Freeman, Esquire, dated March 10, 1965, addressed to defendant Registrar, and marked Exhibit F annexed to the complaint filed in this action on March 24, 1965.

The motions of defendants for a stay of the action in this Court pending a determination of the Florida action have become moot in view of the disposition made of that matter, and hence they will be denied. The motions of defendants to transfer this action to a federal court in Florida pursuant to 28 U.S.C.A. § 1404(a) will be denied because the action, in the first instance, could not have been brought in that District. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

This opinion shall constitute findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

Counsel for plaintiff, on notice to counsel for defendants, will please submit an appropriate order.