939 A.2d 257

APPALOOSA INVESTMENT, L.P.I.; PALOMINO FUND LTD.; RELIANCE STANDARD LIFE INSURANCE CO.; MUTUAL SHARES FUND; MUTUAL BEACON FUND; MUTUAL QUALIFIED FUND; MUTUAL DISCOVERY FUND; MUTUAL EUROPEAN FUND; MUTUAL BEACON FUND CANADA; MUTUAL SHARES SECURITIES FUND; MUTUAL DISCOVERY SECURITIES FUND; FRANKLIN NATURAL RESOURCES FUND;

FRANKLIN NATURAL RESOURCES SECURITIES FUND; AND FRANKLIN GOLD AND PRECIOUS METAL FUNDS, PLAINTIFFS–RESPONDENTS, v. J.P. MORGAN SECURITIES, INC.; BMO NESBITT BURNS CORP.; BMO NESBITT BURNS SECURITIES, INC., A/K/A BMO NESBITT BURNS, INC.; HARRIS NESBITT, INC.; BANK OF MONTREAL; SNC–LAVALIN/KILBORN ENGINEERING PACIFIC, LTD.; AND P.T. KILBORN PAKAR REKAYASA; DEFENDANTS, AND BARRICK GOLD CORP., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 8, 2008—Decided January 28, 2008.

Before Judges COBURN, FUENTES and CHAMBERS.

*Martin F. Cunniff,* argued the cause for appellant (*Connell Foley, LLP,* and *Howrey, LLP,* attorneys; *Mr. Cunniff, Mark D. Wegener,* and *Edward Han,* of counsel; *Liza M. Walsh* and *Christine I. Gannon,* on the brief).

*Jennifer Horan Greer* (*Gibbs & Bruns, LLP*) of the Texas bar, admitted pro hac vice, argued the cause for respondent (*Hellring Lindeman Goldstein & Siegal, LLP,* attorneys; *Richard D. Shapiro, Ms. Greer, Kathy D. Patrick* (*Gibbs & Bruns, LLP*) and *Scott A. Humphries* (*Gibbs & Bruns, LLP*) both of the Texas bar, admitted pro hac vice, on the brief).

The opinion of the court was delivered by

COBURN, P.J.A.D.

Defendant Barrick Gold Corporation moved for dismissal of plaintiffs' complaint for lack of personal jurisdiction. The trial court denied the motion, and we granted Barrick leave to appeal. Barrick is located in Canada and its stock is traded on the Toronto stock exchange in Canada and on the New York Stock Exchange. As of the filing of the complaint, its only continuous conduct in New Jersey was the use of a New Jersey company to act as a transfer agent in relation to its publicly traded stock and the use of other New Jersey companies as agents to provide stockholders with information about the stock as required by law. Plaintiffs' cause of action against Barrick did not arise out of those contacts. Therefore, the question presented is whether the continuous use of the noted agents was sufficient to justify New Jersey's exercise of general jurisdiction over Barrick under the Due Process Clause of the United States Constitution. Our answer is no because these minimum contacts were merely incidental to Barrick's stock market listing and were not sufficiently substantial in relation to Barrick's business to support the conclusion that they approximated Barrick's physical presence in this state. Consequently, we reverse and remand for dismissal of the complaint as against Barrick.

The trial court's summary judgment ruling came after the parties had completed discovery on the issue of jurisdiction. The material facts are not in dispute.

On October 31, 2005, plaintiffs filed a complaint in the Law Division alleging that numerous defendants, including Barrick,

made false statements on which plaintiffs relied to their detriment. The fourteen plaintiffs, all conducting business in New Jersey, consist of mutual funds, hedge funds, and an insurance company. They allege damages of approximately $60 million.

Barrick is a multi-billion dollar gold mining company organized under the laws of the Province of Ontario with headquarters in Toronto, Canada. Its half-million outstanding shares of capital stock are traded on the Toronto and New York stock exchanges. Over fifty percent of its common stock is held in the United States. Its business is exploring for gold and operating gold mines in various parts of the world, but not in New Jersey. It sells its gold to about fifteen bullion banks, none of which are located in New Jersey. It is not licensed to do business in New Jersey and it has no subsidiaries located here. It owns no real property in New Jersey and maintains no office or bank account here. It neither sells nor advertises in this state. None of its employees are located in or travel to New Jersey on Barrick's business, and Barrick holds no meetings here, pays no taxes here, and has never sued or been sued in our courts.

As of the date on which the complaint was filed, Barrick's only continuous contacts with New Jersey were with CIBC Mellon Investor Services, LLC ("Mellon"), ADP Investor Communications ("ADP"), and BNY Information Services ("BNY"), all are which are companies located in this state. As to Barrack's contracts with Mellon, Barrick did not purchase Mellon's services directly. Rather, it arranged for the services through Mellon's Canadian affiliate, and it paid for those services in Canada.

■ Mellon functioned as Barrick's transfer agent in relation to the stock traded on the New York Stock Exchange. We will accept plaintiffs' description of that activity as including maintaining facilities to receive stock transfer requests; examining those requests to ensure they are properly authorized; verifying that surrendered stock certificates are genuine and unaltered; issuing and registering new certificates; canceling surrendered stock certificates; recording those transactions and delivering complet-

ed transfers; issuing shares on the exercise of stock options; and preparing daily transfer journals. Barrick also used Mellon as a transfer agent in connection with its purchase by merger of a $2 billion mine in San Francisco, but Mellon's responsibilities were quite limited, consisting essentially of notifying shareholders of the merger, obtaining stock certificates from the merger, reporting the share transactions, and preparing and mailing tax reporting forms.[1]

Plaintiffs assert that ADP and BNY were used by Barrick "to maintain a list of and communicate with Barrick's beneficial shareholders in the United States," activities required by law because of the registration of the stock on the New York Stock Exchange. These activities primarily include the mailing of annual reports and meeting materials.

Plaintiffs' cause of action relates to their decisions to purchase and continue to hold stock in a corporation called Bre–X Minerals. Bre–X claimed that it had discovered the world's largest gold reserve deposit in Busang, Indonesia, which was estimated to exceed 70 million ounces. These claims were made by Bre–X on numerous occasions, but unfortunately they were entirely false. In fact, there were no such reserves. Bre–X had "salted" the ore samples with gold from other sources in an effort to defraud investors into buying Bre–X stock. Before the fraud was discovered by the public, Barrick was involved in unsuccessful efforts to join Bre–X in developing the Busang site.

The complaint charges that during that process, Barrick received expert advice indicating that the gold discovery claims were probably untrue, but despite that knowledge, Barrick made public

---

[1] Plaintiffs also refer to the similar use of Mellon, and the use of New Jersey's Merrill Lynch Pierce Fenner & Smith as dealer manager, in a larger mine purchase, but that event is irrelevant since it occurred after the complaint was filed. *Harlow v. Children's Hosp.*, 432 *F.*3d 50, 65 (1st Cir.2005) (noting that in a general jurisdiction analysis "contacts after the filing of the complaint are not considered"). Plaintiffs also mention a few isolated and minimal purchases of services in New Jersey that need not be detailed.

statements in Canada, not in New Jersey, supporting Bre–X's claims and indicating its intent to pursue a joint venture to mine the gold. The complaint alleges that Barrick made these statements in the hope that they would increase the price of its own stock, which appears to have happened, at least for a time.

Under the Due Process clause of the United States Constitution, when a cause of action is unrelated to a nonresident's contacts with the forum state, as is the case here, our jurisdiction is "general," rather than "specific." *Lebel v. Everglades Marina, Inc.*, 115 *N.J.* 317, 322, 558 *A.*2d 1252 (1989). We may not exercise general jurisdiction unless defendant's contacts are sufficiently continuous and substantial so as to approximate physical presence in this state. *Wilson v. Paradise Village Beach Resort and Spa*, 395 *N.J.Super.* 520, 528, 929 *A.*2d 1122 (App.Div. 2007) (citations omitted). In making this assessment, we must consider the nature, quality and quantity of the contacts. *Ibid.*

Although the courts of this state have not addressed the precise issue at hand, it has been addressed elsewhere. These decisions appear to uniformly agree that the use of agents to carry out ministerial activities required for maintenance of stock exchange listings is an insufficient contact for general jurisdiction. *Wiwa v. Royal Dutch Petroleum Co.*, 226 *F.*3d 88, 97 (2d Cir.2000); *Celi v. Canadian Occidental Petroleum Ltd.* 804 *F.Supp.* 465, 468 (E.D.N.Y.1992); *Gilson v. Pittsburgh Forgings Co.*, 284 *F.Supp.* 569, 571 (S.D.N.Y.1968); *Fowble v. Chesapeake & Ohio Ry. Co.*, 16 *F.*2d 504, 505 (S.D.N.Y.1926); *Freeman v. Bean*, 266 *N.Y.* 657, 195 *N.E.* 368 (1935); *Scrivner v. Twin Americas Agric. & Indus. Developers, Inc.*, 1 *Kan.App.*2d 404, 573 *P.*2d 614, 619 (1977); *Robbins v. Ring*, 9 *Misc.*2d 44, 166 *N.Y.S.*2d 483, 485 (1957).

That is not to say that activities relating to or necessary to maintain a stock exchange listing should never receive consideration in the Due Process analysis. Rather, the rule is "that, without more, they are insufficient to confer jurisdiction." *Wiwa, supra*, 226 *F.*3d at 97 (citations omitted).

Although Barrick's presence in New Jersey through its stock exchange related agents was continuous, it was not substantial in relation to the core of Barrick's business, that is mining and selling gold, and did not approximate physical presence as a business entity in this state. Consequently, the trial court erred in refusing to grant Barrick's motion.

Reversed and remanded for entry of an order dismissing the complaint as to Barrick.